869 F.2d 605
 49 Fair Empl.Prac.Cas. 289,
49 Empl. Prac. Dec. P 38,786, 276 U.S.App.D.C. 167,
57 USLW 2540
 Edward F. DOUGHERTY, et al.
v.
Marion S. BARRY, Jr., as Mayor of the District of Columbia
Appeal of Elijah B. ROGERS, as City Administrator of the
District of Columbia, et al.
 Nos. 85-5715, 85-5716.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 18, 1989.
Decided March 7, 1989.
As Amended March 7, 1989.
 
 Charles L. Reischel, Deputy Corp. Counsel, District of Columbia, with whom Frederick D. Cooke, Jr., Corp. Counsel, Washington, D.C., District of Columbia, was on the brief, for appellants.
 William F. Causey, Rockville, Md., for appellees.
 Leonard Schaitman and Sandra Wien Simon, Attys., Dept. of Justice, Washington, D.C., also entered appearances for appellees.
 Daniel J. Popeo, Utica, N.Y., and George C. Smith, also entered appearances, for amicus curiae Washington Legal Foundation.
 Before RUTH B. GINSBURG, STARR,* and SENTELLE, Circuit Judges.
 Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.
 RUTH BADER GINSBURG, Circuit Judge:
 
 
 1
 This appeal arises from two consolidated civil actions, each charging "reverse" race discrimination in promotion practices of the District of Columbia Fire Department. Plaintiffs-appellees are eight white firefighters; remaining defendants-appellants are the District of Columbia and its former City Administrator, Elijah B. Rogers. The district court found that the District of Columbia and Rogers had discriminated on the basis of race in promoting two black firefighters to deputy fire chief, thereby violating both Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e (1982),[1] and section one of the Civil Rights Act of 1866,[2] id. Sec. 1981 (hereafter, section 1981).[3] As redress, the district court ordered full back pay and retirement benefits for the eight white firefighters as though each had received one of the two promotions. Dougherty v. Barry, 607 F.Supp. 1271, 1290 (D.D.C.1985).
 
 
 2
 On appeal, the District of Columbia and Rogers do not challenge the district court's finding of discrimination, but raise two subsidiary issues. First, appellees did not bring suit within ninety days of receiving notice of their right to sue from the Equal Employment Opportunity Commission (EEOC or Commission). On that account, should the district court have dismissed the Title VII claims as untimely, thereby precluding relief entirely for three appellees who did not participate in the section 1981 action? Second, should the district court have denied relief because two white firefighters other than appellees might have received the promotions absent discrimination; or, alternately, should the district court have limited the scope of the relief it granted to the monetary value of the two promotions? We hold that the district court should have rejected the Title VII claims as untimely and divided the monetary value of the two promotions among the five section 1981 plaintiffs. We therefore vacate in part the judgment filed April 30, 1985, and remand with instructions for its modification.I.
 
 
 3
 At the top of the District of Columbia Fire Department's management hierarchy is the fire chief. Below the chief are two assistant fire chiefs, and below them six deputy fire chiefs. Under the deputy chiefs are the battalion fire chiefs, of which there were thirty-three at the time of the relevant events.
 
 
 4
 Under District of Columbia law, the mayor selects deputy chiefs from among the battalion chiefs. D.C. CODE Sec. 4-302 (1981). No formal policy governs promotions to deputy chief; it was the common practice before the events at issue, however, for the mayor to select from a short list of senior battalion chiefs, who were designated "acting" deputy chiefs and could be called upon to assume temporarily the duties of absent deputy chiefs. Normally, the mayor simply rubber-stamped the recommendation of the fire chief.
 
 
 5
 District of Columbia law requires "[e]very District government agency [to] develop and submit to the Mayor and Council an affirmative action plan" with the goal of achieving "full representation, in jobs at all salary and wage levels and scales, in accordance with the representation of all groups in the available work force of the District of Columbia, including, but not limited to, Blacks, Whites, Spanish-speaking Americans, Native Americans, Asian Americans, females, and males." D.C.Code Secs. 1-507-508 (1981). In compliance with this law, the Fire Department had promulgated equal employment plans for fiscal years 1979 and 1980. These plans called for "equal opportunity in all facets of [the Department's] operations, including ... promotion and upward mobility," but did not direct preferential treatment for minorities or establish any numeric goals or quotas. See 607 F.Supp. at 1277.
 
 
 6
 The dispute at issue stemmed from two sets of promotions in 1979 and 1980. In June 1979, District of Columbia Mayor Marion S. Barry, Jr. promoted Norman Richardson, a black battalion chief, to deputy chief. The fire chief had originally recommended Alfonso Torre, a more senior white battalion chief, for the promotion. Instructed by City Administrator Elijah Rogers to "rethink his recommendation in light of the department's 'affirmative action goals,' " however, the fire chief ultimately recommended Richardson. 607 F.Supp. at 1278. Richardson was only twentieth in seniority out of thirty-three battalion chiefs and, unlike Torre, was not on the short list of acting deputy chiefs.
 
 
 7
 On July 24, 1979, Edward F. Dougherty filed a racial discrimination charge with the District of Columbia Office of Human Rights (OHR) on behalf of himself and sixteen other battalion chiefs, including the seven other appellees; all of the complainants[4] had more seniority than Richardson. The OHR referred the charge to the EEOC for simultaneous consideration.
 
 
 8
 In October 1979, the list of acting deputy chiefs was expanded from under ten to nineteen. Two of the new acting deputies, Joseph Kitt and Theodore Coleman, were black. Of all the officers on the list of nineteen, Kitt and Coleman had served the least time as battalion chiefs. In January 1980, three vacancies occurred at the deputy chief level. City Administrator Rogers, to whom Mayor Barry had delegated his authority to choose the Fire Department's top management, selected Kitt, Coleman, and Torre for the jobs. Rogers testified that race was a factor in those selections. See Brief for the District of Columbia at 15. On March 27, 1980, appellees amended their OHR and EEOC charges to include the Kitt and Coleman promotions.
 
 
 9
 Eventually, on March 13, 1981, the OHR issued a determination that there was no probable cause to credit appellees' discrimination claims. Appellees requested reconsideration of that determination on April 9, 1981. On April 23, 1981, the EEOC similarly determined that there was no cause to support the charges, and specifically informed appellees: "This determination con cludes the Commission's processing of the subject charge." Id. at 19. Attached to the EEOC's determination was a notice of right to sue, which stated, inter alia, in boldface capital letters: "IF YOU DECIDE TO SUE, YOU MUST DO SO WITHIN NINETY (90) DAYS FROM RECEIPT OF THIS NOTICE OF RIGHT TO SUE; OTHERWISE YOUR RIGHT TO SUE IS LOST." Id. at 20.
 
 
 10
 Appellees, however, apparently believed their request for reconsideration had kept their claim alive at the OHR and that failure to exhaust their OHR remedies precluded suing on the EEOC charge. See Order, Dougherty v. Barry at 3 (D.D.C. Mar. 6, 1984) [hereafter March 1984 Order]. They therefore did not sue within ninety days of receiving the EEOC's notice. On December 9, 1981, the OHR dismissed appellees' request for reconsideration.
 
 
 11
 On May 10, 1982, the EEOC District Director, acting sua sponte, notified appellees of her intent to "reopen and reconsider" the Commission's earlier determination of no probable cause. On June 10, she issued a notice of reconsideration. That notice revoked the April 23, 1981 no probable cause determination but it explicitly stated that "[r]evocation of the Letter of Determination does not revoke the Notice of Right to Sue issued to you [on April 23, 1981]." See id. While the EEOC was reconsidering whether there was cause to support a Title VII charge, on June 17, 1982, five of the appellees, Dougherty, Andrew T. Buckler, Jr., Wilton E. Watts, Henry J. Ford, and Francis X. Flaherty, filed suit in the district court under section 1981.
 
 
 12
 On July 9, 1982, the EEOC District Director issued a determination finding probable cause to believe that the promotions were based on race and violated Title VII. The EEOC therefore referred the matter to the Department of Justice for possible civil action. The Justice Department decided not to pursue litigation; on November 4, 1982, however, it issued a "Notice of Right to Sue Within 90 Days." See id. at 4.
 
 
 13
 In February 1983, within ninety days of receiving the second right to sue notice, the five section 1981 plaintiffs and three other appellees, Bernard M. Bowerman, Vincent K. Elmore, and William H. Phillips, filed a Title VII action in the district court. That action was consolidated for trial with the earlier-filed section 1981 action.
 
 
 14
 The defendants in the district court moved for summary judgment in the Title VII action on the ground that the complaint in that case was not filed within ninety days of the plaintiffs' receipt of the EEOC's April 23, 1981 right to sue notice. The district court denied the motion on two grounds. First, that court held that "the issuance of a second notice of right to sue effectively revoked the first notice." Id. at 5. Second, the district court thought equitable considerations justified maintenance of the Title VII action. Id. at 6-7. Appellees, then without counsel, were understandably confused about the relationship between the OHR and EEOC, the court said. They thought their pending request for reconsideration by the OHR temporarily blocked suit on the Title VII claim despite the EEOC's ninety-day notice. Id. at 7. The district court recognized that the Title VII plaintiffs, even if confused while OHR remained in the picture, "could well be faulted for failing to take action" within ninety days once OHR dismissed their request for reconsideration. Balancing the interests on both sides, however, the district court concluded that plaintiffs' interest in litigating their Title VII complaint outweighed defendants' interest in avoiding exposure to a slightly stale claim for relief. Id. at 7-8.
 
 
 15
 After trial on both the section 1981 and Title VII claims, the district court rejected the charge relating to the Richardson promotion; the court found it evident that, even absent discrimination, another white, Torre, would have received the promotion ahead of all the plaintiffs. 607 F.Supp. at 1282-83. With respect to the Kitt and Coleman promotions, however, the district court held that defendants had violated section 1981 and Title VII. First, the court found that "but for their race," Kitt and Coleman "would not have been promoted over their white colleagues." Id. at 1285. Second, defendants could not successfully urge an "affirmative action defense"; the Fire Department's equal opportunity plan then in place emphasized broadened recruitment and advancement practices, but did not authorize promotion preference based on race. Id. at 1287-88.
 
 
 16
 Initially, the party line-up on the defendants' side included Mayor Barry. The district court found no basis for holding the mayor individually liable under section 1981, however, because he had delegated the responsibility of selecting deputy chiefs to City Administrator Rogers and had not participated in the promotion of Kitt and Coleman. However, Rogers was held answerable individually, along with the District of Columbia; the district court rejected Rogers' plea of qualified immunity because his behavior was "patently unreasonable." Id. at 1288-89.
 
 
 17
 Turning to remedies, the district court observed that the plaintiffs in the section 1981 action requested only those categories of relief also available under Title VII. Id. at 1289. The court then explained why an order directing promotion of any or all of the plaintiffs to deputy chief would be inappropriate. Only two positions had been open, meaning six plaintiffs definitely would not have been promoted even absent discrimination; promotions were based on subjective as well as objective factors, which made it difficult to evaluate plaintiffs against each other; and plaintiffs did "not comprise the entire group of officers eligible for promotion to deputy" at the time. Id.
 
 
 18
 Nevertheless, the court awarded full monetary relief to each plaintiff in the form of back pay and an annuity adjustment, i.e., for monetary award purposes, each plaintiff was to be recompensed as though he had been promoted to one of the two deputy positions. Id. at 1290.[5] The court reasoned that defendants could not show "that any particular plaintiff would not have been promoted absent discrimination." Id. at 1289. Dividing the monetary value of the two promotions eight ways would not make plaintiffs whole, the district court believed, for they had lost the opportunity to gain a large, albeit intangible, benefit--the "pride and respect of one's colleagues which accompany a hard-earned promotion." Id. at 1290. The District of Columbia and Rogers appealed, challenging the district court's decision only with regard to the timeliness of the Title VII claim and the scope of the relief granted.[6]
 
 II.
 
 19
 A Title VII action in court, Congress has directed, is to be commenced within ninety days after obtaining notice of right to sue from the EEOC. Section 706(f)(1) of Title VII provides:
 
 
 20
 (1) If within thirty days after a charge is filed with the Commission ... the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court.... If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.
 
 
 21
 42 U.S.C. Sec. 2000e-5(f)(1).
 
 
 22
 Pursuant to this section, the EEOC notified appellees that it had concluded processing their charge and had not found probable cause, but that appellees had the right to sue within ninety days. Furthermore, as the district court found, "[i]n unambiguous language, the right-to-sue notice declared that failure to sue within that time period would result in forfeiture of [appellees'] cause of action." March 1984 Order at 2-3.
 
 
 23
 The district court decided, however, that the second notice of right to sue, issued by the Justice Department after the EEOC had reconsidered appellees' case and found probable cause, revoked the first notice and revived appellees' right to sue. Id at 5. Yet an EEOC regulation expressly states that although the EEOC can reconsider a dismissal, Commission reconsideration reopens the door to a private action only when the reconsideration itself occurs within ninety days of the issuance of a right to sue notice:
 
 
 24
 In cases where the Commission decides to reconsider a dismissal ... a notice of intent to reconsider will promptly issue. If such notice of intent to reconsider is issued within 90 days from receipt of a notice of right to sue and the charging party has not filed suit ... the notice of intent to reconsider will vacate the dismissal ... and revoke the notice of right to sue. If the 90 day period has expired ... the notice of intent to reconsider will vacate the dismissal ... but will not revoke the notice of right to sue.
 
 
 25
 29 C.F.R. Sec. 1601.21(b)(1) (1987). Because the EEOC notified appellees of its intent to reconsider its dismissal over one year after it issued the first right to sue notice, the Commission's reconsideration did not revive appellee's right to sue.
 
 
 26
 The district court nevertheless felt there was some play in the regulation. Acknowledging that "the regulation authorizes the issuance of a second notice of right to sue in certain circumstances not found here," the court concluded that the regulation
 
 
 27
 does not expressly limit the Commission's discretion to issue a second notice in other situations. It is conceivable that even when issuance of a notice of intent to reconsider does not revoke a prior notice of right to sue, later actions by the Commission could have that effect. In this case, the issuance of a second notice of right to sue effectively revoked the first notice.
 
 
 28
 March 1984 Order at 5.
 
 
 29
 We think the district court construed the regulation too flexibly. True, the prescription does not advert to the effect of a second right to sue letter; the regulation contemplates, however, that second notices shall issue only when the EEOC notifies complainants of its intent to reconsider within ninety days of the first notice of right to sue. The published explanation accompanying the EEOC's prescription supports our interpretation: "The revisions [to the regulation] ... make clear that the Commission will not issue a second notice of right to sue anew in situations where the original 90 days period in which to bring suit has expired prior to the notice of intent to reconsider...." 45 Fed.Reg. 48,616 (1980); see Lute v. Singer Co., 678 F.2d 844, 846 (9th Cir.1982) (EEOC's authority to rescind right to sue notice limited to situations in which EEOC notifies parties of intent to reconsider dismissal within ninety days of issuance of right to sue notice), modified and reh'g en banc denied, 696 F.2d 1266 (1983); Trujillo v. General Elec. Co., 621 F.2d 1084, 1086-87 (10th Cir.1980) (same); Gonzalez v. Firestone Tire & Rubber Co., 610 F.2d 241, 246 (5th Cir.1980) (same). The EEOC's finding, upon reconsideration, of probable cause and the Justice Department's issuance of a second right to sue letter do not alter the fact that the EEOC did not notify appellees of its intent to reconsider their charges within ninety days of the first notice. The second notice therefore should not work to recover a lost right to sue.
 
 
 30
 This case, we recognize, presents a situation not expressly addressed by the regulation, for here the Justice Department, not the EEOC, issued the second notice. We conclude, however, for the reasons next set out, that a right to sue notice issued by the Justice Department does not revoke a prior notice issued by the EEOC, and so does not revive a private right to sue.
 
 
 31
 The language of Title VII is dense on whether it is the EEOC's or the Attorney General's (i.e., the Justice Department's) duty to issue right to sue notices in cases involving governmental entities. Courts have tended to interpret Title VII as laying that responsibility at the Attorney General's door, focusing on the part of section 706(f)(1) that provides:
 
 
 32
 If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought [by the person aggrieved].
 
 
 33
 42 U.S.C. Sec. 2000e-5(f)(1); see, e.g., Hendrix v. Memorial Hosp., 776 F.2d 1255, 1256-57 (5th Cir.1985); Fouche v. Jekyll Island-State Park Auth., 713 F.2d 1518, 1524 (11th Cir.1983). Yet, as appellants point out, see Brief for the District of Columbia at 27-28 n. 27, an earlier sentence of that section indicates that the EEOC will refer a case to the Attorney General only if the EEOC's conciliation efforts fail:
 
 
 34
 In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent....
 
 
 35
 42 U.S.C. Sec. 2000e-5(f)(1). And under section 706(b) of Title VII, the Commission attempts conciliation only if it determines "that there is reasonable cause to believe that the charge is true." Id. Sec. 2000e-5(b). If, however, the Commission determines there is not reasonable cause, "it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action." Id. Thus, the statutory language and structure contemplate that the Commission will issue right to sue notices in cases involving a governmental unit when it does not find probable cause. The Attorney General will issue such notices only when the EEOC finds probable cause, conciliation efforts fail, and the EEOC refers the case to the Justice Department, but the Attorney General decides not to pursue the action.
 
 
 36
 In any event, in 1980 the Justice Department and EEOC reached an understanding that put this interpretation into practice. The Justice Department itself requested that the EEOC issue right to sue notices to governmental bodies:
 
 
 37
 We recommend that the Commission ... publish[ ] a new regulation ... providing for the issuance of notices of right to sue along with dismissal in cases involving state or local governmental units. We believe that adoption of this procedure nationwide will be consistent with the intent of Congress that once the administrative process is complete, the filing of suits should be permitted. The new procedure will bring the procedure for state and local governments into accord with that for private sector respondents.
 
 
 38
 Letter from Assistant Attorney General Drew S. Days III to Eleanor Holmes Norton, Chair, EEOC (Mar. 17, 1980), reprinted in 45 Fed.Reg. 48,617-18 (1980). The Commission followed the Justice Department recommendation, revising its regulations to provide:
 
 
 39
 In all cases where the respondent is a government, governmental agency, or a political subdivision, the Commission will issue a notice of right to sue when there has been a dismissal of a charge.... In all other cases where the respondent is a government, governmental agency, or political subdivision, the Attorney General will issue the notice of right to sue, including ... when there has been a finding of reasonable cause by the Commission, there has been a failure of conciliation, and the Attorney General has decided not to file a civil action.
 
 
 40
 29 C.F.R. Sec. 1601.28(d) (1987).
 
 
 41
 Under both Title VII and the EEOC regulation, then, the Commission shall issue right to sue notices in cases involving governmental units when it finds no probable cause. The Attorney General, however, shall do so where the Commission finds probable cause and conciliation efforts fail, but the Attorney General declines to pursue the case. Thus, in this case, the EEOC properly issued the first notice when it found no probable cause. Viewed alone, the Attorney General's issuance of the second notice would also seem appropriate, because it followed upon the Commission's finding of probable cause. The question, then, reduces to whether the Attorney General's notice revived appellees' right to sue in light of the Commission's original notice.
 
 
 42
 We believe allowing the Justice Department to revive a private right of action that the Commission could not revive in analogous circumstances would violate the structure and spirit of the arrangement established by the Commission and the Justice Department, and embodied in EEOC regulations. The agreement between the two agencies contemplates procedural parity between cases involving governmental units and cases dealing with private respondents. See 45 Fed.Reg. 48,617 ("The new procedure will bring the procedure for state and local governments into accord with that for private sector respondents."). As noted above, once the ninety day period is over, the EEOC cannot revive a complainant's right to sue a private respondent by reconsidering its finding of no probable cause or by issuing a second notice of right to sue. If the Justice Department could, after reconsideration by the Commission, breathe new life into a right of action against a governmental entity, the procedures for cases involving governmental and private sector respondents would diverge markedly, contrary to the intent of the agreement and the Commission's regulations. Moreover, allowing a second notice to provide appellees with a second bite at the apple "would vitiate the congressionally mandated period of limitation in favor of a hodgepodge of ad hoc determinations by" the Justice Department. Cleveland v. Douglas Aircraft Co., 509 F.2d 1027, 1030 (9th Cir.1975) (holding that second notice from EEOC did not revive plaintiff's claims); cf. Solomon v. Hardison, 746 F.2d 699, 702 (11th Cir.1984), as amended on denial of reh'g (1985) (letter from Justice Department noting its position that, once EEOC issued right to sue notice in case involving government entity, it would be improper for Attorney General to issue second right to sue notice). We therefore hold that the notice issued by the Justice Department did not revive appellees' right to sue.
 
 
 43
 The district court also decided that appellees' suit was not time-barred because equitable considerations justified maintenance of the action. We accept, arguendo, the district court's determination that appellees justifiably "believed that pending administrative remedies relating to their OHR complaint precluded suit on the EEOC charge." March 1984 Order at 7. Even if the OHR proceedings justified noncompliance with the deadline, however, appellees waited on too long: they unjustifiably failed to bring suit within ninety days of dismissal of the OHR complaint in December 1981. The district court acknowledged that this further delay was "less understandable." Id. That court nevertheless permitted the suit, reasoning that appellees' interest in litigating their case outweighed appellants' interest in avoiding an action "no longer as fresh as it might have been." Id. at 8. When it made this evaluation, however, the district court lacked the guidance of Higher Authority that has since become available to enlighten our review.
 
 
 44
 In 1984, in Baldwin County Welcome Center v. Brown, 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam), the Supreme Court held that a pro se plaintiff's action was time-barred even though she had mailed her right to sue letter to the district court, along with a request for appointed counsel, within the ninety-day limit. The Court reasoned that the plaintiff-respondent had not commenced an action because she had never filed a complaint, despite multiple warnings from the district court that she must do so within ninety days of her notice from the EEOC. Id. at 149-51, 104 S.Ct. at 1724-26. Tellingly for the task before us, the Court rejected the plaintiff-respondent's contention that the ninety-day limit should be equitably tolled because the defendant-petitioner had not been prejudiced by her noncompliance:
 
 
 45
 Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures.
 
 
 46
 Id. at 152, 104 S.Ct. at 1726.
 
 
 47
 Similarly, in the case sub judice, lack of prejudice to appellants should enter the calculus only if another factor first provides the essential underpinning for equitable tolling. Appellees could claim the requisite "independent basis" for an equitable time extension if, for example, they had received inadequate notice from the EEOC, had been misled by the district court or the EEOC, or had been "lulled ... into inaction" by affirmative misconduct on the part of appellants. Id. at 151, 104 S.Ct. at 1726; cf. Rozen v. District of Columbia, 702 F.2d 1202, 1204 (D.C.Cir.1983) (excusing plaintiff's delay in filing suit because EEOC had instructed him to wait until he received notice from Justice Department). No such factors exist here. Appellees were "unambiguous[ly]" notified that they must sue within ninety days of the EEOC's dismissal of the charge. March 1984 Order at 2. In light of Baldwin County, then, we conclude that no equitable considerations justified or excused appellees' failure to meet the ninety-day limit. Appellees' Title VII claims therefore were not timely filed and should have been dismissed by the district court.[7]III.
 
 
 48
 Turning to the question of monetary recovery, we reject appellants' argument that appellees are not entitled to any relief because two other whites, Joseph R. Granados and Harry H. Shaffer, would have gotten the promotions absent discrimination. As the district court held, once appellees proved they had been subjected to disparate treatment, the burden shifted to appellants to show by clear and convincing evidence that each appellee was not entitled to relief because he would not have received one of the promotions even absent discrimination. 607 F.Supp. at 1289. See International Bhd. of Teamsters v. United States, 431 U.S. 324, 361-62, 97 S.Ct. 1843, 1867-68, 52 L.Ed.2d 396 (1977); Milton v. Weinberger, 696 F.2d 94, 98-99 (D.C.Cir.1982); Day v. Matthews, 530 F.2d 1083, 1085 (D.C.Cir.1976) (per curiam).[8] Appellants failed to carry that burden in this case.
 
 
 49
 Appellants argue that Granados and Shaffer were considered the most qualified for promotion to deputy at the time of the Kitt and Coleman promotions. See Brief for the District of Columbia at 44; Reply Brief at 11. As evidence, they note that Shaffer was promoted to deputy chief in October 1980 (and then to Assistant Chief in April 1982) and Granados was promoted to Assistant Chief in October 1980. See Brief for District of Columbia at 44; Reply Brief at 11. Although Granados and Shaffer may objectively appear to have been the most qualified for promotion, promotions to deputy chief were "based on both subjective and objective factors and followed no clear pattern." 607 F.Supp. at 1289. Moreover, Granados' and Shaffer's subsequent promotions occurred after appellees had all retired from the Fire Department. See id. at 1280. Thus, we cannot gainsay the district court's conclusion that appellants failed to prove by clear and convincing evidence that all or any of the appellees would not have been promoted even absent discrimination.
 
 
 50
 Although appellees are entitled to monetary relief, the extent of that relief granted by the district court was overly generous. We are unaware of any support for the district court's decision to award full recompense to each appellee as though each had been promoted. Rather, precedent favors dividing the monetary value of the two promotions among appellees pro rata. See, e.g., Hameed v. International Ass'n of Bridge, Structural & Ornamental Iron Workers, Local Union No. 396, 637 F.2d 506, 520-21 (8th Cir.1980); Thompson v. Sawyer, 678 F.2d 257, 267, 290 (D.C.Cir.1982); United States v. Unit ed States Steel Corp., 520 F.2d 1043, 1055-56 (5th Cir.1975), reh'g en banc denied, 525 F.2d 1214 (1976), cert. denied, 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976).
 
 
 51
 Dividing the value of the promotions among appellees more closely approximates the goal of " 'recreat[ing] the conditions and relationships that would have been had there been no' unlawful discrimination." Teamsters, 431 U.S. at 372, 97 S.Ct. at 1873 (quoting Franks v. Bowman Transp. Co., 424 U.S. 747, 769, 96 S.Ct. 1251, 1266, 47 L.Ed.2d 444 (1976)). If the district court had been able to determine with certainty which two of the appellees would have received the promotions, the proper course would have been to award those two appellees full relief and the others none. See, e.g., Segar v. Smith, 738 F.2d 1249, 1290 (D.C.Cir.1984). Because the court was unable to do so, however, one must assume that each appellee enjoyed less than a one hundred percent chance of being promoted. By awarding each appellee full back pay, however, the district court treated each as though he possessed a one hundred percent chance of receiving one of the promotions, counter to that court's own conclusion that one could not determine for certain which appellees, if any, would have been promoted. Thus, in order to restore appellees to the position they would have occupied absent discrimination, see Albemarle Paper Co. v. Moody, 422 U.S. 405, 418-23, 95 S.Ct. 2362, 2372-74, 45 L.Ed.2d 280 (1975), the district court should have awarded each appellee a fraction of the promotions' value commensurate with the likelihood of his receiving one of the promotions.[9]
 
 
 52
 Because the relief awarded by the district court thus put appellees in a better position than they would have occupied absent discrimination, we vacate the award and remand the matter to the district court. The district court has already stated that it is unable to evaluate appellees against one another, 607 F.Supp. at 1289; on remand, then, the district court may simply divide the monetary value of the two promotions equally among appellees.[10]
 
 CONCLUSION
 
 53
 Appellees' Title VII action was untimely filed and should be dismissed. Appellees Bowerman, Elmore, and Phillips, who were not party to the section 1981 suit, are therefore not entitled to any relief. The district court's monetary award to appellees was excessive and should be limited to a pro rata division of the value of the two promotions among the five section 1981 plaintiffs. Accordingly, we vacate the judgment of the district court in part and remand for calculation of the monetary relief due appellees Dougherty, Buckler, Watts, Ford, and Flaherty.
 
 
 54
 It is so ordered.
 
 
 
 *
 Circuit Judge Starr was a member of the panel but did not participate in this decision
 
 
 [1]
 Title VII provides, in pertinent part:
 It shall be an unlawful employment practice for an employer--
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
 (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
 42 U.S.C. Sec. 2000e-2(a) (1982).
 
 
 [2]
 This section was reenacted in 1870 after ratification of the fourteenth amendment in 1868. Act of May 31, 1870, ch. 114, Sec. 16, 16 Stat. 144
 
 
 [3]
 Section 1981 states:
 All persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 42 U.S.C. Sec. 1981.
 
 
 [4]
 For the sake of simplicity, we will refer to all seventeen administrative complainants as "appellees," even though nine of those complainants did not join appellees' quest for judicial relief
 
 
 [5]
 The court ordered that each plaintiff be paid pre-retirement back pay equal to the difference between battalion chief salary and deputy chief salary from January 24, 1980 to the date of his retirement, post-retirement back pay equal to the difference between his retirement pay drawn to date and the retirement pay due to a deputy chief from the time of each plaintiff's retirement to the present, and an annuity adjustment calculated as if each had received the promotion
 The district court also granted plaintiffs' request for a declaratory judgment that they had been subjected to unlawful discrimination, and found that all of them were entitled to attorneys' fees and costs under 42 U.S.C. Sec. 1988 and that seven of the eight were also entitled to fees and costs under Title VII. 607 F.Supp. at 1289-90. In addition, the court rejected plaintiff Ford's Title VII claims, originally filed with the EEOC separately from the other plaintiffs' claims, because Ford had not sought judicial review of the EEOC's dismissal of his claim for lack of jurisdiction. Id. at 1283 n. 7. Ford does not challenge that ruling in this appeal.
 
 
 [6]
 Appellants originally appealed the entire district court decision, including its determinations that appellants had unlawfully discriminated against appellees and that City Administrator Rogers was personally liable. See Brief for the District of Columbia at 25, 33-42. On December 6, 1988, however, appellants moved, without opposition by appellees, to dismiss those parts of its appeal. This court granted appellants' motion on January 9, 1989
 
 
 [7]
 Hendrix v. Memorial Hospital, 776 F.2d 1255 (5th Cir.1985), stressed by appellees, does not persuade us that the Title VII claims in this case should be adjudicated. In Hendrix, the EEOC notified the plaintiff that it was dismissing her charges and that the plaintiff could sue the defendant "within 90 days following receipt of Notice of Right to Sue which will be issued by the Department of Justice." Id. at 1255. The Justice Department issued the right to sue notice four years later, and the plaintiff filed suit 88 days thereafter. The Fifth Circuit held that the suit was not time-barred. That case differs in two key respects from the case before us. First, the agreement between the EEOC and Justice Department providing that the Commission will issue right to sue notices in cases involving governmental entities was not yet in effect, id. at 1256 & n. 1; moreover, the court read Title VII as providing that the Attorney General shall issue all such notices, contrary to our own interpretation, see supra pp. 611-612. Second, the EEOC in that case never issued a right to sue notice, but led the plaintiff to believe that she could not sue until she received such notice from the Justice Department. 776 F.2d at 1255. Thus, the plaintiff would have had a strong claim for equitable tolling of the limitation period. Cf. Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725-26, 80 L.Ed.2d 196 (1984) (per curiam) (suggesting that tolling may be appropriate if plaintiff is misled by defendant or court). This latter factor also explains this circuit's decision in Rozen v. District of Columbia, 702 F.2d 1202, 1203-04 (D.C.Cir.1983), to permit a suit filed more than 90 days after the EEOC had notified a plaintiff that it had not found probable cause
 
 
 [8]
 A court may impose classwide relief for a group of individuals subjected to discrimination where it is impossible to determine which particular individual would have received the benefit but for the discrimination without falling "into 'a quagmire of hypothetical judgments.' " Segar v. Smith, 738 F.2d 1249, 1290 (D.C.Cir.1984) (citations omitted), cert. denied, 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); see also Hameed v. International Ass'n of Bridge, Structural & Ornamental Iron Workers, Local Union No. 396, 637 F.2d 506, 520 (8th Cir.1980). Once the group establishes liability, as the district court found appellees did, there is a presumption that each member is entitled to relief; the burden is on the defendant to "rebut that presumption in each individual case." Milton v. Weinberger, 696 F.2d 94, 98 (D.C.Cir.1982). Although this case does not involve a class action, the same principles apply because all of the appellees were eligible for the promotion, and the district court was unable to determine which of them would not have been promoted. Furthermore, although cases establishing this allocation of burdens generally involve Title VII, we see no reason--and neither party offers any--to treat section 1981 differently in this regard. Dismissing the Title VII claim therefore does not affect the allocation of burdens
 
 
 [9]
 We recognize that Sec. 1981 "is not coextensive in its coverage with Title VII," but provides "both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages." Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). Appellees' section 1981 claim, however, "request[ed] only those categories of relief also available under Title VII--there [was] no demand for punitive damages." 607 F.Supp. at 1289. Moreover, the availability of compensatory relief beyond back pay does not authorize a remedy that places appellees in a better position than they would have occupied absent discrimination
 
 
 [10]
 We need not consider the thornier question of whether the fraction due each appellee should in fact be smaller because other battalion chiefs not party to this suit were eligible for the promotions. Appellants have made no claim that the other qualified battalion chiefs should be considered in devising the share due each appellee, and appellants' counsel specifically conceded at oral argument that if we rejected the argument that Granados and Shaffer would have received the promotions, the value of the two promotions should be divided among appellees