Edward G. HOLLAND, Jr., Plaintiff,

v.

BOARD OF TRUSTEES OF THE UNIVERSITY OF THE DISTRICT OF COLUMBIA, Defendant.

Civ. A. No. 90–1703.

United States District Court, District of Columbia.

June 18, 1992.

Gary T. Brown, Washington, D.C., for plaintiff.

Charlotte A. Bradley, Asst. Corp. Counsel, Washington, D.C., for defendant.

## ORDER

REVERCOMB, District Judge.

Plaintiff, a white man who has served as an administrator for the University of the District of Columbia and one of its precursor institutions since 1975, brings this employment action under 42 U.S.C. § 1981, the Fifth and Thirteenth Amendments, and the District of Columbia Human Rights Act

(DCHRA), D.C.Code § 1–2501 *et seq.*, for UDC's failure to make him a permanent employee and for demoting him in 1987. Defendant District of Columbia has moved for dismissal pursuant to Rules 12(b)(1) and (6), Fed.R.Civ.P., and on grounds that the acts alleged by plaintiff as occurring prior to July 23, 1987 [1] are time-barred pursuant to the District of Columbia's residual three-year statute of limitations. For the reasons set forth below, the defendant's motion is granted in part and denied in part.

█ On a motion to dismiss under Rule 12(b)(6), the Court's inquiry essentially is limited to the content of the complaint, although items appearing in the record of the case also may be taken into account. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* Section 1356–1357 (1990). While the Court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory, as a practical matter, a dismissal under Rule 12(b)(6) is appropriate in cases "in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Id.* at 1357. The Court is to accept the plaintiff's description in the complaint of what happened to him along with any conclusions that can reasonably be drawn from that description. *Id.* "However, the court will not accept conclusory allegations concerning the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened, or if these allegations are contradicted by the description itself." *Id.*

█ Considering first plaintiff's claim under the DCHRA, the Court finds that it must fail. The private right of action established by D.C.Code § 1–2557 is not available to District of Columbia government employees. *Dougherty v. Barry*, 604 F.Supp. 1424, 1442 (D.D.C.1985); *Rasul v. District of Columbia*, 680 F.Supp. 436, 439

(D.D.C.1988). For this reason, Count III of the Amended Complaint must be dismissed.

█ Plaintiff's Fifth and Thirteenth Amendment claims lie against the District of Columbia under 42 U.S.C. § 1983 [2] and, like his claim under 42 U.S.C. § 1981, are subject to the three-year limitation imposed by D.C.Code § 12–301(8). *Banks v. Chesapeake and Potomac Telephone Co.*, 802 F.2d 1416 (D.C.Cir.1986). The complaint, stripped of its many legal conclusions, states in "essence ... that Dr. Holland was never officially granted permanent status as an Associate Vice President" at UDC, that "[t]he assurance of permanent placement was made in early 1980," that in August 1981 "another University memorandum assured all employees that each would receive permanent placement to the position [they] then occupied," that in November 1981 "another attempt to place Dr. Holland permanently in the position he was performing was unsuccessful," and that "[t]he impact of that continuing failure to grant him permanent status was made clear on October 1, 1987[,] when again an opportunity to place Dr. Holland in [a permanent] position was ignored and he was put in a lower graded and lower paying position." Holland Opp. at 3–4. Plaintiff also alleges "that every comparably situated African–American received permanent placement, but plaintiff did not," and makes clear that his claim is one of disparate treatment based on "a pattern or continuous set of activities by the personnel arm of Defendant acting to interfere with his permanent placement." *Id.*

To avoid the statute of limitations bar, plaintiff argues that, because he was subjected to a "continuing violation" of discrimination culminating with his demotion in 1987, all of the incidents he alleges accrue within the statute of limitations. *Id.* at 4–5. On a motion to dismiss, the Court must agree with this continuing violation theory since plaintiff can reasonably be said to have alleged "a series of related [discriminatory] acts, one or more of which

---

1. Plaintiff filed this action on July 23, 1990.

2. Section 1983 creates a cause of action for "deprivation of *any* rights" by the District of Columbia that are "secured by the Constitution and laws."

falls within the limitations period." *Milton v. Weinberger*, 645 F.2d 1070, 1075–76 (D.C.Cir.1981) (noting that "typical of 'continuing violations' [are] allegations of unlawful ... promotion policies, or allegations of unfair bias permeating the employer's personnel practices"). The defendant concedes, Motion to Dismiss at 7, that the alleged 1987 demotion falls within the statute of limitations.

As to plaintiff's claim under the Fifth Amendment that he possessed a property interest in his job, his demotion from which constituted a taking without due process, the Court also must dismiss for failure to state a cause of action upon which relief can be granted. In assessing this claim, the Court must determine "whether [plaintiff] had a legitimate expectation, based on rules (statutes or regulations) or understandings (contracts expressed or implied), that he would continue in his job." *Hall v. Ford*, 856 F.2d 255, 265 (D.C.Cir.1988). Plaintiff alleges no statute or regulation governing his positions at UDC that confers job tenure or protection on him. Rather, he argues that

> he obtained the permanent placement in a University position at the Associate Vice President level, based on the intended operation of the Hay classification system [3], the repeated efforts of his supervisor, who was a University President or Vice president when making the efforts, the outstanding performance at that level for over seven years, and the receipt of salary and benefits for that level.... His long-term, regular, unquestioned encumbrance [sic] of the Associate Vice President position acted to bestow upon him the attributes and benefits of the position. Dr. Holland was appointed to the position *de facto*.

**3.** Plaintiff's pleadings make several references to a "Hay Associates Classification Study," which apparently evaluated in some fashion certain job positions at UDC, including that of plaintiff. *See* Amended Complaint para. 16. However, the nature and significance of this study to plaintiff's claims is unclear from the pleadings.

**4.** Likewise, plaintiff alleges at Amended Complaint para. 43 that

Plaintiff's Opposition at 7–8.[4] Thus, it is apparent that plaintiff's claim to a property right is grounded solely on his assertion of a contract arising from his dealings with UDC and its officials.

 It is well established in this jurisdiction, however, that not all government employment creates a property interest, and that an employment contract is terminable at will unless it is for a specified term. *Car–Mar Construction Corp. v. Skinner*, 777 F.Supp. 50, 57 n. 6 (D.D.C.1991); *Frazier v. University of the District of Columbia*, 742 F.Supp. 28, 29 (D.D.C.1990); *Newman v. Legal Services Corp.*, 628 F.Supp. 535, 538 (D.D.C.1986). Plaintiff never alleges that he was employed by defendant for a definite period of time, and indeed, the complaint indicates that from the outset his employment term could not have been more uncertain:

> The [1977] notice granting Dr. Holland his interim appointments ... also stated that the appointments "will remain in effect until permanent appointments are made in established positions in accordance with University Personnel Policies *or unless otherwise relieved by proper authority.*

Amended Complaint para. 8 (emphasis added). The Court therefore finds that the plaintiff was an at-will employee. As the Court of Appeals for this Circuit has held, "government employees ... who are terminable at will have no property interest [in their jobs] because there is no objective basis for believing that they will continue to be employed indefinitely." *Hall, supra*, 856 F.2d at 265. Because plaintiff had no property interest in his job, he had no right to a pre-demotion hearing. On this basis,

Plaintiff Holland's long time performance at the Associate Vice President level, the assignments of everyone else similarly situated to permanent positions, the assurance by officials of the University regarding protection of his interests, and the decisions by the University's President to appoint Plaintiff to the Associate Vice President position all combined to grant Dr. Holland a permanent property interest in the Associate Vice President position.

Count II of the Amended Complaint must be dismissed.

■ Plaintiff's Thirteenth Amendment claim, made as part of Count I, must also be dismissed. The Thirteenth Amendment does not give rise to an independent cause of action; plaintiffs in discrimination suits must confine themselves to remedies such as 42 U.S.C. § 1981 adopted pursuant to Section 2 of that amendment. *Westray v. Porthole, Inc.*, 586 F.Supp. 834, 839 (D.Md. 1984).

■ Unlike plaintiff's other claims, however, the Court finds that plaintiff's claim under Section 1981 survives a Rule 12(b)(6) motion to dismiss. The defendant argues, Motion to Dismiss at 11, that under *Patterson v. McLean Credit Union*, 491 U.S. 164, 171, 109 S.Ct. 2363, 2369, 105 L.Ed.2d 132 (1989), racial discrimination occurring during a contractual term of employment does not violate Section 1981, but is controlled instead by the contractual relationship itself, and is thus governed by state contract law and by Title VII. As already stated, however, the gravamen of plaintiff's complaint is that, despite adequate performance in his job and repeated assurances of *permanent* placement over a number of years, he was precluded from contracting for a *permanent* position while "every comparably situated African–American received permanent placement," and that this disparate treatment resulted from racial animus manifested in "a pattern or continuous set of activities by the personnel arm of Defendant acting to interfere with his permanent placement." *See* Amended Complaint para. 12–18, 23, 31–36. In sum, "[p]laintiff argues that if there was no racial discrimination, he would have been granted permanent status, which would have materially altered his employment relationship with defendant." Opposition at 12. Thus it is clear that plaintiff's allegations on this point, while inartfully stated, charge interference with formation of a particular type of employment contract, *i.e.*, one for "permanent" as opposed to "acting" status, and the Court finds that such a claim is not precluded simply because the interference allegedly occurred following commencement of "acting" status employment.

■ As to the sufficiency of plaintiff's pleading, the same analytical framework applies to claims of race discrimination in employment brought under both under Title VII and Section 1981. *Dougherty v. Barry*, 607 F.Supp. 1271, 1281 (D.D.C.1985), *modified on other grounds*, 869 F.2d 605 (D.C.Cir.1989). A plaintiff must allege facts sufficient to make out a *prima facie* case of race discrimination; such *prima facie* case requires proof (1) that plaintiff belongs to a protected group, (2) that he was qualified for and applied for a promotion, (3) that he was considered for and denied the promotion, and (4) that a similarly-qualified employee from outside the protected group was promoted at the time plaintiff was denied promotion. *Id.* As to element (1), the protections afforded by Section 1981 are available to white persons. *Torre v. Barry*, 661 F.2d 1371, 1372 n. 1 (D.C.Cir.1981) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295, 96 S.Ct. 2574, 2585, 49 L.Ed.2d 493 (1976)). Therefore, based on the factual assertions outlined above and all reasonable inferences to be drawn therefrom, the Court is satisfied that plaintiff's complaint meets the minimum requirements for pleading a Section 1981 claim.

For the foregoing reasons, it is

ORDERED that defendant District of Columbia's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. COUNTS II and III of plaintiff's amended complaint are DISMISSED IN THEIR ENTIRETY; COUNT I is DISMISSED IN PART as to plaintiff's Thirteenth Amendment claim.