Sidney **BISHOPP**, et al., Appellees,

v.

**DISTRICT OF COLUMBIA,** a Municipal Corporation, Appellant.

Nos. 94–7018, 94–7165.

United States Court of Appeals, District of Columbia Circuit.

Argued April 18, 1995.

Decided June 16, 1995.

---

Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, argued the cause, for appellant. With him on the briefs was Garland Pinkston, Acting Corp. Counsel. Donna M. Murasky and John A. Payton, Asst. Corp. Counsels, entered appearances.

Douglas B. Huron, Washington, DC, argued the cause and filed the brief, for appellee. James H. Heller, entered an appearance.

Before: SILBERMAN, SENTELLE and RANDOLPH, Circuit Judges.

SENTELLE, Circuit Judge:

The District of Columbia appeals the district court's award of damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1988), to District of Columbia firefighter Floyd Yocum for employment discrimination in a promotion decision. Five white firefighters filed this discrimination suit against the District of Columbia, claiming that the fire department discriminated against them in filling a vacancy for Assistant Fire Chief—Operations ("AFCO"). After remand by this court to determine which of the five plaintiffs would have received the promotion, *see Bishopp v. District of Columbia*, 788 F.2d 781 (D.C.Cir.1986), the district court determined that John Breen, who held the position of Deputy Fire Chief—Fire Marshal ("fire marshal"), would have received the promotion to AFCO. The district court further held that appellee Yocum would have been promoted to the fire marshal position then held by Breen had there been no discrimination in the selection of the AFCO. Consequently, the district court awarded damages to both Breen and Yocum. The District of Columbia challenges the award of damages to Yocum. Because we hold that Yocum was not an actual victim of discrimination, we reverse.

## I.

This case has a protracted history, reaching this court for the second time on appeal after our remand in *Bishopp v. District of Columbia*, 788 F.2d 781 (D.C.Cir.1986). While an extended recital of the facts can be found in our earlier opinion, *see* 788 F.2d at 782–84, we will briefly summarize the background before discussing those facts more pertinent to this appeal.

In August 1974, incumbent Assistant Fire Chief—Operations ("AFCO") Doyle Harpster, one of two Assistant Fire Chiefs reporting directly to the Fire Chief, retired from the District of Columbia Fire Department. The AFCO directly supervised five Deputy Fire Chiefs ("DFC's"), three of whom worked in the Firefighting Division and in turn supervised a number of subordinate Battalion Fire Chiefs ("BFC's"). The fourth

DFC served as fire marshal and the fifth ran the department's training center. 788 F.2d at 782. Department policy provided that promotions to positions above the rank of BFC were within the discretion of the mayor, but could only be filled with candidates from the BFC rank or higher. D.C.Code Ann. § 4–302 (1981). The AFCO position was eventually filled by a black Battalion Fire Chief, Jefferson Lewis.

In 1982, after pursuing charges with the Equal Opportunity Employment Commission, five white firefighters, Sidney Bishopp, John Breen, William Q. Stickley, Floyd E. Yocum and Joseph E. Zeis alleged in a complaint filed in district court that they were denied promotion to AFCO because of their race. At the time of Lewis' selection for AFCO, Bishopp, Stickley, Zeis and Breen were serving at the Deputy Fire Chief rank, and Yocum was serving at the lower BFC rank. Because Yocum had served in the position longer than Lewis, all five plaintiff-appellees were senior to Lewis.

After hearing the evidence, the district court held that appellees had presented a prima facie case under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), but it concluded that the District of Columbia had demonstrated sufficient non-discriminatory justification for hiring Lewis and thus held for the District of Columbia on all counts. *Bishopp v. District of Columbia,* 602 F.Supp. 1401 (D.D.C.1985). We reversed, rejecting the District of Columbia's justification for hiring Lewis and failing to hire any of the plaintiffs as "incredible" and "farfetched," *id.* at 788, and remanded the case to the district court "for further consideration, including the fashioning of an appropriate remedy." *Id.* at 789.

Since that remand, we have decided *Dougherty v. Barry,* 869 F.2d 605 (D.C.Cir. 1989), a similar case involving a challenge by eight Battalion Fire Chiefs to the filling of two DFC slots in 1979–80. The district court there had found liability and granted relief to each of the eight plaintiffs as though each had been promoted to DFC. We vacated and remanded the district court's judgment, holding that "the extent of [the] relief grant-

ed by the district court was overly generous." *Id.* at 614. Instead, in order to "more closely approximate[ ] the goal of 'recreat[ing] the conditions and relationships that would have been had there been no' unlawful discrimination," *id.* at 615 (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 372, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)), we concluded that the district court had two options in remedying the discrimination: (1) if it were able to determine with certainty which two of the appellees would have received the promotions, it should award those two appellees full relief and the others none; or (2) if it were unable to do so, it should divide the monetary value of the two promotions among all qualified appellees pro rata. *Id.* at 615.

In aftermath of the *Dougherty* decision, the plaintiffs revised their prayer for relief on remand, asking the district court to provide full damages to John Breen, who plaintiffs determined was most qualified for the AFCO position. However, plaintiffs also added a new wrinkle to their claim at this stage. They argued that if Breen, the DFC-fire marshal, had been properly promoted to AFCO, a vacancy would have arisen in his position of fire marshal. Plaintiffs contended that the fire marshal vacancy would have been filled by Floyd Yocum, the most senior BFC. Thus, as a result of the initial discrimination, the District of Columbia had in fact injured both Breen and Yocum, plaintiffs argued.[1] Plaintiffs presented expert testimony regarding the amount of damages due both Breen and Yocum. Although the District of Columbia vehemently objected to any separate relief for Yocum, it did not attempt to obtain further discovery or present any evidence regarding the likelihood of Yocum's promotion to DFC.

In November 1993, the district court concluded that both Breen and Yocum were entitled to damages. It found that because the evidence demonstrated that he was best qualified for the AFCO position, "Unquestionably, Breen should have received the position of AFC–O in the fall of 1974." With respect to the claim that Yocum would have been promoted to fire marshal, the district

---

1. All five plaintiffs had agreed to divide the mon- etary value of the total award among them.

court found that the District of Columbia "simply has not carried its burden of proof that Yocum would not have been promoted to fill the vacant DFC slot. Substantially, the evidence indicates that Yocum would have been so promoted." The court awarded Breen $244,703 and Yocum $366,134.

The District of Columbia appeals the award of damages to Yocum for the fire marshal position. Because we conclude that Yocum was not an actual victim of discrimination by the District of Columbia, we reverse the district court's award of damages to him.

## II.

As a threshold matter, we hold that the issue of Yocum's entitlement to damages for the DFC position was properly reached by the district court and is properly before us. Under Title VII, the "trial court has authority to award appropriate relief dictated by the evidence, even though it may not have been sought in the pleadings." *Clark v. Marsh,* 665 F.2d 1168, 1172 n. 4 (D.C.Cir.1981) (citation omitted). We thus reject appellant's suggestion that appellees have waived this claim by not initially raising it in the pleadings below, but instead waiting until after remand.

In determining whether a late-raised claim for relief is warranted, the court must ask whether the party requesting relief has "improperly and substantially prejudiced the other party" by failing to raise the claim earlier. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 424, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975). Here, it is apparent that the District of Columbia was not "substantially prejudiced" by plaintiffs' raising of Yocum's separate claim for damages on remand. First, the amended claim for relief became necessary only when *Dougherty v. Barry* made clear that plaintiffs' original theory of full recovery by all five plaintiffs was no longer valid. Second, the District of Columbia could have avoided any perceived prejudice simply by requesting further discovery or an evidentiary hearing regarding Yocum's recovery upon remand. *See Hopkins v. Price Waterhouse,* 920 F.2d 967, 969 (D.C.Cir.1990) (noting district court's willing-ness to allow post-remand evidence concerning nondiscriminatory rationale for employment decision). Since it never asked for either accommodation, the District of Columbia should not now get the benefit of hindsight.

## III.

Section 706(g) of Title VII, 42 U.S.C. § 2000e–5(g) (1988), provides for "make-whole" relief to victims of illegal employment discrimination, mandating that where a court finds that an employer has engaged in unlawful employment practices, it may "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate." Make-whole remedies, like other equitable remedies, "repair the denial of a constitutional right." *Swann v. Charlotte–Mecklenburg Bd. of Educ.,* 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971). Specifically, in the Title VII context, the purpose of "make-whole" remedies is to redress "injuries suffered on account of unlawful employment discrimination." *Albemarle,* 422 U.S. at 418, 95 S.Ct. at 2372.

Section 706(g) does not provide relief to *every* plaintiff who did not receive a promotion where another person is unlawfully selected on the basis of race. Instead, section 706(g) limits make-whole relief *"only* to those who have been *actual victims of discrimination...."* *Firefighters, Local Union No. 1784 v. Stotts,* 467 U.S. 561, 580, 104 S.Ct. 2576, 2588, 81 L.Ed.2d 483 (1984) (emphasis added); *see also Lander v. Lujan,* 888 F.2d 153, 156 (D.C.Cir.1989) ("[C]ourts must make *the victim* 'whole' by 'plac[ing him], as near as may be, in the situation he would have occupied if the wrong had not been committed.' ") (emphasis added). Individual members of a class of victims, like the five firefighters here, must "demonstrate that they have been actual victims of the discriminatory practice" before they may recover. *Stotts,* 467 U.S. at 578–79, 104 S.Ct. at 2588. Thus, "mere membership in the disadvantaged class is insufficient," *id.* at 579, 104

S.Ct. at 2588, to warrant recovery; rather, "each individual must prove that the discriminatory practice had an impact on him." *Id.* (citing *Teamsters,* 431 U.S. at 367–71, 97 S.Ct. at 1871–72).

■ For purposes of this case, *Dougherty v. Barry* defines which member of the plaintiffs' class was an "actual victim" of discrimination. *Dougherty* implicitly provides that, where specific findings are possible, the number of "actual victims" of discrimination is limited to the number of positions filled as a result of discrimination. *See Dougherty,* 869 F.2d at 614–15. In that case, where two Deputy Fire Chief positions were filled in a discriminatory manner, the court stated that the plaintiffs' class could recover the monetary value of no more than two DFC positions. *Id.* at 615. Where the district court is able to determine which member of a plaintiffs' class would have received a promotion absent illegal discrimination, then that member is entitled to full compensation and the remaining class members receive nothing. *Id.* In conjunction with Supreme Court precedent, then, *Dougherty* suggests that an individual plaintiff, in order to fully recover, must demonstrate both membership in a disadvantaged class and individual economic impact as a result of denial of a promotion to the position *which is the subject of unlawful discrimination.*[2] *See Dougherty,* 869 F.2d at 615; *Stotts,* 467 U.S. at 579, 104 S.Ct. at 2588.

■ Against this backdrop, appellees argue that all five of them were originally adjudged "actual victims" of discrimination by the district court, a conclusion they claim is supported by this court's statement that "all of appellants were better qualified than Lewis" under traditional promotion criteria. *See Bishopp v. District of Columbia,* 788 F.2d at 786. Thus, appellants maintain that each is entitled to any and all damages that may flow from that discrimination. In Yocum's case, appellees argue that because he was an actual victim of discrimination with respect to the filling of the AFCO position, he is entitled to damages for the District of Columbia Fire Department's failure to promote him to the lower position of fire marshal that would have resulted absent the discrimination. Only then could the court "recreat[e] the conditions and relationships that would have been had there been no unlawful discrimination." *Dougherty,* 869 F.2d at 615 (citations and internal quotations omitted).

Appellees' argument misconceives the essence of our Title VII employment discrimination caselaw. While *Dougherty* does instruct the district court to attempt to "recreat[e] the conditions and relationships" that would have existed absent discrimination, *id.,* again, that remedial authority is limited to "actual victims" of discrimination. Nowhere is the district court given authority to "remedy" an injury to one who has not been a victim of discrimination. In this case, where discrimination affected the promotion decision for one position, there can be only one "actual victim" who may fully recover. *See id.*

The plaintiffs' class here alleges illegal discrimination only with respect to the AFCO position. Because the DFC-fire marshal position never opened, plaintiffs did not, and indeed could not, allege illegal discrimination in the filling of that position. Even under the plaintiffs' theory of the case, then, Yocum sought damages for the DFC position only as a collateral consequence of discrimination arising in the AFCO promotion.

Yocum's theory of injury is implausible because he never suffered the impact of discrimination; i.e., he would not have received the promotion to AFCO absent the discrimination in filling that position. When the district court concluded that John Breen would have filled the AFCO vacancy had racial considerations not tainted the selection process, it effectively determined that only John Breen was an "actual victim" of illegal

---

2. This case arose before adoption of the Civil Rights Act of 1991, Pub.L. 102–166, 105 Stat. 1072 (1991), which expanded remedies for victims of intentional employment discrimination. *See* 42 U.S.C. § 1981a (1994). Section 1981a provides that an individual victim of intentional employment discrimination "may recover compensatory and punitive damages" in a limited manner as authorized by the statute. *Id.* at § 1981a(a)(1), (b). As this case arose before their adoption, we express no opinion today on the effect of the 1991 amendments.

discrimination. While the other four plaintiffs may have been members of a "disadvantaged class," the district court's determination that Breen alone was entitled to the promotion to AFCO foreclosed their claim of victimization with respect to that position. *See Dougherty,* 869 F.2d at 615. Thus, Yocum was entitled to nothing for the discrimination against Breen. Neither Yocum nor anyone else was entitled to damages for the hypothetical failure to fill Breen's fire marshal position because the position never opened; thus, no discrimination could have taken place in filling that position. It is not enough to argue that the District of Columbia would have discriminated in filling the fire marshal position if it had opened. It did not open, and no such discrimination occurred.

### IV.

We conclude that the district court erred in awarding damages to Yocum for the District of Columbia's failure to promote him to fire marshal. Title VII relief is limited to "actual victims" of discrimination. *Stotts,* 467 U.S. at 579, 104 S.Ct. at 2588. Here, where only one position was filled in a discriminatory manner, and the district court was able to conclude that another member of the plaintiffs' class would have received the promotion absent discrimination, *Stotts* and *Dougherty* dictate that the remaining class members are entitled to nothing. Thus, the district court's "collateral consequences" award to Yocum was improper. Accordingly, the decision of the district court is vacated with respect to the award of damages to Yocum.