**UNITED STATES of America**

v.

**BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (overseas) Limited, and International Credit and Investment Company (overseas) Limited, Defendants.**

**Crim. Action No. 91–0655 (JHG).**

United States District Court,
District of Columbia.

Feb. 27, 1996.

---

Breckinrige L. Willcox, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for petitioner Banque Indosuez.

Gerald McDowell, Director, Asset Forfeiture Office, Criminal Division, U.S. Dept. of Justice, Stefan D. Cassella, Deputy Director, Michelle Crawford, Trial Attorney, U.S. Dept. of Justice, for U.S.

*PETITION OF BANQUE INDOSUEZ*

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS

JOYCE HENS GREEN, District Judge.

Presently pending is the United States' Motion to Dismiss ("Motion to Dismiss") the Claim and Petition for Remission of $263,-250.00 by Banque Indosuez as a Third Party Claimant Pursuant to 18 U.S.C. § 1963(*l*) ("L–Claim"). The sole ground of the Motion to Dismiss is lack of timeliness.

For the reasons expressed below, the Motion to Dismiss will be denied. Should the United States or the Court–Appointed Fiduciaries oppose the L–Claim on the merits, they shall file their briefs in opposition on or before March 29, 1996.

## BACKGROUND

On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants (collectively "BCCI") and the plea agreement between them and the United States of America. Thereupon, and in accordance with 18 U.S.C. § 1963, an Order of Forfeiture was entered.

Paragraph 1(e) of the Order provides that the corporate defendants named in this action shall forfeit to the United States ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time, but not property that may be brought into the United States by or on behalf of Court–Appointed Fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates as described in the plea agreement.

Attached to the First Order of Forfeiture was a listing of BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a First Supplemental Order on January 31, 1992, which directed immediate seizure of the specific assets listed therein. The Court has since amended the Order of Forfeiture to include additional assets, including property set forth in the Second and Third Supplemental Lists of Forfeited Property. *See* Order of Forfeiture of July 29, 1992 (Second

Order of Forfeiture); Order of Forfeiture of August 19, 1993 (Third Order of Forfeiture).

The Third Order of Forfeiture is relevant to Banque Indosuez' L–Claim presently before the Court. Attached to the Third Order of Forfeiture was a Third Supplemental List of Forfeited Property aggregating $101,302,-465.54. Included among the accounts seized at First American Bank of New York ("FAB-NY" or "First American") was Account No. 23012 of Banque de Commerce et de Placements, S.A. ("BCP"), which included the $263,250 at issue in the L–Claim presented by Banque Indosuez.

In compliance with 18 U.S.C. § 1963(*l*)(1) and to inform third parties of their potential rights to seek recovery of assets declared forfeited in the Third Order of Forfeiture, the United States published notice of the Order of Forfeiture, as amended, during the period between September 3, 1993, and September 27, 1993 in eleven major newspapers including the *Wall Street Journal*, the *New York Times*, the *Chicago Tribune*, the *Los Angeles Daily Journal*, the *Washington Post*, and the *International Herald Tribune*. *See* United States' Notice to the Court of the government's compliance with Order of August 19, 1993, filed September 21, 1993.[1] In addition, personal notice was sent to 523 persons and entities, including Ms. Francine Marx, Deputy General Counsel to Banque Indosuez of Geneva, Switzerland. *Id.* at Exhibit 2, at 11.

However, prior to entry of the Third Order of Forfeiture, Banque Indosuez became aware that the sum of $263,250 had been blocked at First American, and it attempted to determine why. By letter of February 4, 1993, Banque Indosuez requested from the Federal Reserve information about the blocking order at First American and sought the Federal Reserve's assistance in obtaining release of the funds. *See* Letter of Ms. Francine Marx of Banque Indosuez to Marylin (sic) D. Barker, Esq., Board of Governors of the Federal Reserve, dated February 4, 1993, attached to Banque Indosuez' L–Claim, *supra,* at Exhibit F. Further correspondence was exchanged between Banque Indosuez and the Federal Reserve during February 1993, and, on April 1, 1993, Ms. Barker of the Federal Reserve advised Ms. Marx of Banque Indosuez that the sum of $263,250 was frozen in BCP's account at First American Bank, because it was BCCI-related property. *See* Letter of Marilyn D. Barker, Esq., Board of Governors of the Federal Reserve, dated April 1, 1993, attached to Banque Indosuez' L–Claim, *supra,* at Exhibit A. The Federal Reserve advised Banque Indosuez:

A procedure for filing a claim to funds contained in the [Court Registry Investment System] account has been established by [the Department of] Justice. Should you wish to obtain further information regarding these procedures, please contact the Justice attorney who is handling the matter, Robert C. Dalton, at the

1. In relevant part, the notice published provided:

Notice is hereby given that on August 19, 1993, in the above-captioned case, the Honorable Joyce Hens Green, United States District Judge for the District of Columbia, entered an order condemning and forfeiting the following properties to the United States of America:

**Third Supplemental List of Forfeited Property**

| Account No. | Description | Approx. Value |
|---|---|---|
| | * * * | |
| **First American Bank of N.Y. | | |
| 00023012 | Banque de Commerce et de Placements S.A. | $827,396.35 |
| | * * * | |

The Order of Forfeiture having been entered, the United States hereby gives notice of its intention to dispose of each of the forfeited properties in such manner as the Attorney General of the United States may direct, consistent with the plea agreement entered into by the defendants and the United States on December 19, 1991. Any persons or entities having or claiming a legal right, title or interest in any of the aforementioned properties must, within thirty (30) days of the final publication of this notice or actual receipt thereof, whichever is earlier, petition the United States District Court for the District of Columbia for a hearing to adjudicate the validity of his/her alleged interest in the property pursuant to Title 18, United States Code, Section 1963(*l*).

Asset Forfeiture Office, Criminal Division, United States Department of Justice.

*Id.*

On April 26, 1993, Banque Indosuez accepted Ms. Barker's advice and wrote to the Department of Justice. In relevant part, Ms. Marx' letter stated:

It appears that a procedure for filing a claim to funds in the CRIS account has been established. Could you please advise us as to the appropriate procedure? Also, could you confirm that the amount of $263.500 transferred by us was effectively transferred into an account of BCP's with FABNY? (We had been informed that BCP did not have an account at FABNY).

Letter of Ms. Marx of Banque Indosuez to Mr. Robert C. Dalton, Asset Forfeiture Office, Criminal Division, U.S. Department of Justice, dated April 26, 1993, attached to Banque Indosuez' L–Claim, *supra,* at Exhibit B.

Receiving no response to her letter of April 26, 1993, Ms. Marx tried again on May 25, 1993:

As I mentioned in my letter [of April 26, 1993], we would like to know the procedure for filing a claim to funds in the CRIS account established for the funds in BCP's account with FABNY, pursuant to the order of the United States District Court for the District of Columbia dated March 18, 1993.

We would also appreciate knowing whether the $263.500 transferred by Banque Indosuez to BCP's account at FABNY on July 12, 1991, value July 15, 1991, was effectively credited to that account.

Letter of Ms. Marx of Banque Indosuez to Mr. Robert C. Dalton, Asset Forfeiture Office, Criminal Division, U.S. Department of Justice, dated May 25, 1993, attached to Banque Indosuez' L–Claim, *supra,* at Exhibit C.

By letter of September 17, 1993, the Department of Justice provided Banque Indosuez, along with 522 others, with notice that certain BCCI-related property had been declared forfeited, including BCP's account, account # 23012 in the amount of $827,396.35.

United States' Notice to the Court, *supra,* at

The letter also provided Banque Indosuez with information about the claims procedure:

The procedure for filing a claim is set forth more fully in Title 18, United States Code, Section 1963(*l*). Under Section 1963(*l*)(2), a person intending to file a claim must do so in the above-styled case within thirty (30) days of his receipt of the Notice of Forfeiture by mail or within 30 days of the last publication of the Order of Forfeiture in a newspaper of general circulation, *whichever is earlier.* As of the date of this letter, the Notice of Forfeiture has not yet been published for the last time; therefore, you will likely have 30 days from receipt of this letter in which to file a claim. *If delivery of the letter is delayed for any reason until after the last publication date, however, the time for filing a claim would run from the last publication date and not from the date of the receipt of the letter.*

Letter of Lee Radek, Director, Asset Forfeiture Office (signed by Robert C. Dalton for Stefan D. Cassella) to Ms. Francine Marx of Banque Indosuez, dated September 17, 1993, attached to Banque Indosuez' L–Claim, *supra,* at Exhibit D (first emphasis in original, second emphasis added); *see also* Notice to the Court (filed Sept. 21, 1993), *supra,* at Exhibits 1 (addressees included Banque Indosuez) & 2 (copy of letter).

On September 27, 1993, the last notice of forfeiture was published. *See* Notice to Court, *supra,* at Exhibit 3. However, for whatever reason, Banque Indosuez did not receive its letter from the Department of Justice until November 15, 1993, approximately three weeks after the 30–day window closed.

On December 9, 1993, within 30 days of receipt of the letter from the Department of Justice but more than 30 days after the last date of publication, Banque Indosuez filed its L–Claim. The government moved to dismiss the L–Claim on March 1, 1994, and, this Court heard oral argument on the Motion to Dismiss on January 20, 1995.

The government contends that Banque Indosuez' L–Claim should be dismissed, be-

Exhibit 2.

cause it was filed untimely: "Because the date of last publication was September 27, 1993, Banque Indosuez' claim should have been filed not later than October 27, 1993. Banque Indosuez did not file its claim, however, until December 9, 1993." Motion to Dismiss, *supra*, at 4. Because it did not receive actual notice until November 15, 1993, however, Banque Indosuez argues that it did not know until then that the $263,500 was included within the $827,396.35 seized in BCP's account # 23012 at First American. Consequently, and because its earlier efforts to obtain such information from the government were unavailing, Banque Indosuez contends that its L–Claim should be considered timely. *See* Petition Banque Indosuez' Response to Government's Motion to Dismiss Petition Pursuant to 18 U.S.C. § 1963(*l*) ("Banque Indosuez' Response"), at 1–3; Transcript of Motions Hearing Before the Honorable Joyce Hens Green, United States District Judge, of January 20, 1995 ("TR"), at 10–15 (argument of Mr. Breckenridge L. Willcox on behalf of Banque Indosuez). Alternatively, if the 30–day period is construed by the Court to run from the date of published notice, Banque Indosuez importunes the Court to excuse the late filing: the government was effectively placed on notice in the earlier correspondence of the nature and extent of Banque Indosuez' claim and no prejudice would arise to the government by equitable tolling. *See* Banque Indosuez' Response, *supra*, at 4–5; TR, *supra*, at 13.

At oral argument and in its memoranda, Banque Indosuez presented the following facts to support its argument on the merits.[2] On July 12, 1991, seven days *after* the effective date of the blocking order on BCCI's assets, Banque Indosuez transferred $263,-500 from a depositor's account at Banque Indosuez to the depositor's account at BCP, also located in Geneva, Switzerland. *See* L–Claim, *supra*, at ¶ 5 (citing Exhibit H, instructions of July 11, 1991). However, because the transfer was accomplished in U.S. dollars, the transaction was made through U.S. correspondent banks in New York. *Id.*

at ¶ 6. Banque Indosuez' correspondent, Banker's Trust in New York, transferred $263,500 to the bank it believed to be BCP's correspondent bank, the ill-fated First American Bank of New York. *Id.* at ¶¶ 6–7. On July 17, 1991, BCP advised Banque Indosuez that its correspondent bank was not First American, but American Express Bank, Ltd., in New York. *Id.* at ¶ 8 (citing Exhibit K).

Pursuant to Banque Indosuez' instructions, Banker's Trust contacted First American and demanded the return of the $263,500, which it asserted had been transferred to First American in error. It was too late. On July 29, 1991, First American advised Banker's Trust that "our bank regulators forbid processing of any [BCC] transactions. Funds that are received in favor of a BCC Bk are held in suspense until further clarification." *Id.* at Ex. O (telex from Banker's Trust to Banque Indosuez relaying telex from First American). Despite the fact that BCP had closed its account with First American on June 4, 1991, a month and a half prior to the effective date of the blocking order, and despite Banque Indosuez' arguments that BCP was not even a subsidiary of the BCCI group, the $263,500 was never released. Ultimately, the funds were included in the Third Order of Forfeiture.

### Discussion

Title 18, United States Code, Section 1963 sets forth an orderly procedure by which third parties seeking to recover interests in forfeited property may obtain judicial resolution of their claims. The provision granting standing to parties seeking to amend an order of forfeiture to exclude certain property states:

> Any person other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The

---

**2.** At oral argument, the government reserved its position on the merits. For the purposes of this opinion, the Court assumes true the facts offered by Banque Indosuez. Should the government or the Court–Appointed Fiduciaries contest the L–Claim on the merits, however, the Court would revisit the underlying facts.

hearing shall be held before the court alone, without a jury.

18 U.S.C. § 1963(*l*)(2).

■ Section 1963(*l*)(6) sets forth the substantive elements that a third party must establish to obtain amendment of an order of forfeiture. This section provides:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.[3]

Only by establishing standing and satisfying the requisite elements of either Subsection 1963(*l*)(6)(A) or Subsection 1963(*l*)(6)(B) may a party obtain judicial relief from an order of forfeiture. *See United States v. BCCI Holdings (Luxembourg), S.A.,* 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States,* —— U.S. ——, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *United States v. Schwimmer,* 968 F.2d 1570, 1584 (2d Cir.1992); *United States v. Lavin,* 942 F.2d 177, 187 (3d Cir.1991).

■ If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing. *See United States v. Cam-*

*pos,* 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Mageean,* 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd without opinion,* 822 F.2d 62 (9th Cir.1987); S.Rep. No. 225, 98th Cong., 1st Sess. 191, 208 n. 46 (Sept. 12, 1983).

The question presented by the government's Motion to Dismiss is whether Banque Indosuez' L–Claim is barred because it failed to comply with the time requirements of 18 U.S.C. § 1963(*l*)(2) when the government provided notice by publication in accordance with the statute. Two legal issues are raised. First, the Court must decide whether the filing time limitation is jurisdictional in nature or is instead a statute of limitations subject to equitable tolling. Second, if the failure to file timely does not deprive the Court of jurisdiction, the Court must decide whether the doctrine of equitable tolling should be applied to this case.

## A. THE TIMELY FILING REQUIREMENTS OF 18 U.S.C. § 1963(*l*)(2)

■ In general, a court is obligated to apply statutory time requirements as written even though "those words lead to a harsh result." *United States v. Locke,* 471 U.S. 84, 95–96, 105 S.Ct. 1785, 1792–93, 85 L.Ed.2d 64 (1985). Where a statutory deadline has passed and a litigant has failed to file timely, substantial compliance is not enough. *Id.* at 100–02, 105 S.Ct. at 1796–96. Moreover, if the statutory provision is jurisdictional in nature, the Court lacks any authority to offer shelter to a duly diligent, but late-filing litigant. However, if the statutory provisions operate as a statute of limitations, such time periods are subject to, *inter alia,* the doctrine of equitable tolling.

As previously noted by this Court, the text of 18 U.S.C. § 1963(*l*)(2) is silent as to whether a court may extend the thirty-day period provided for the filing of L-claims; the statute neither expressly allows nor expressly prohibits extensions of time. *See*

---

**3.** Title 18 U.S.C. § 1963(*l*)(6) contains exactly the same language as 21 U.S.C. § 853(n)(6), the statute providing for forfeiture in criminal narcotics cases, and it appears that no court has interpreted these two provisions differently. Because the two subsections are identical and be-

cause of the relative dearth of case law interpreting and applying Section 1963(*l*), the Court's opinion relies on the reasoning contained in Section 853(n) cases as well as that in Section 1963(*l*) cases.

Order of Nov. 13, 1992, *United States v. BCCI Holdings (Luxembourg), S.A.,* Cr. No. 91–0655, Slip. op. at 4 (Petition of Delphis Bank Ltd).[4] One premise underlying *Delphis Bank* was the nonjurisdictional nature of the time limitations of Section 1963(*l*)(2).

■ Whether timely filing requirements are jurisdictional in nature turns, quite simply, on what Congress intended, as evidenced by the text, structure and legislative history of the statute. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392–98, 102 S.Ct. 1127, 1131–35, 71 L.Ed.2d 234 (1982). While both the text[5] and its underlying legislative history[6] are silent as to whether Section 1963(*l*)(2) is jurisdictional in nature, the structure of the statute offers evidence probative of Congress' intent.

The jurisdictional grant of Section 1963 is contained in Subsection (j), which provides:

> The district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section.

18 U.S.C. § 1963(j).

A completely different subsection contains the time limits for filing L-claims. This subsection is silent as to any jurisdictional underpinning:

> Any person other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

18 U.S.C. § 1963(*l*)(2).

■ Where the jurisdictional grant is structurally separate from the timely filing requirements of a statute, courts have generally found that timely filing is not jurisdictional in nature. *E.g., Zipes,* 455 U.S. at 394, 102 S.Ct. at 1133; *Mondy v. Secretary of the Army,* 845 F.2d 1051, 1055 (D.C.Cir.1988). This is particularly true where the underlying legislative history is sparse and there is no evidence of contrary congressional intent. *Zipes,* 455 U.S. at 394, 102 S.Ct. at 1133. A statute that grants jurisdiction and establishes the filing requirements in the same textual breath, creates filing requirements that are jurisdictional in nature. *See, e.g., AFL–CIO v. OSHA,* 905 F.2d 1568, 1569–70 (D.C.Cir.1990). However, absent "exceptionally emphatic" text to the contrary, *Mondy,* 845 F.2d at 1055, structural separation between the jurisdictional grant and the filing

---

4. In *Delphis Bank,* as in this case, the Department of Justice provided notice of the forfeiture by publication and, in addition, provided actual notice to a number of entities, including Delphis Bank. The Court nevertheless allowed Delphis Bank to file its petition untimely owing to the fact that Delphis Bank had relied, to its detriment, on unintentional but misleading language in the letter from the Department of Justice. The letter provided, in relevant part, "If you intend to file a claim, you must do so *in the above-styled case within thirty (30) days of your receipt of this letter.*" Slip. op. at 4 (citing Exhibit A to Delphis' Motion) (emphasis in original).

Based on the doctrine of equitable estoppel, this Court held that Delphis Bank's reliance on the notice was reasonable and that "fairness dictate[d] that a foreign entity unfamiliar with relatively complex, novel and undeveloped United States criminal forfeiture law should be able to rely on representations regarding time deadlines made to it by the United States government." *Id.* at 7.

5. In relevant part, the text of Section 1963(*l*)(2) states that a person "may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court." While there would appear to be a difference between the word "may" used in Subsection (*l*)(2) and the words "shall" or "must" that are used in other statutes, in construing language similar to that of Subsection (*l*)(2), the Supreme Court has stated: "An argument can undoubtedly be made that the latter language is more stringent than the former, but we are not persuaded that the difference between them is enough to manifest a different congressional intent with respect to the availability of equitable tolling." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990).

6. While silent as to the question at issue in this case, the most detailed legislative history can be found in S.Rep. No. 225, 98th Cong., 1st Sess. 191, 214 (Sept. 12, 1983).

requirements within a statutory regime indicates that Congress never intended a court's jurisdiction to turn on timely filing. *Id.; see also Zipes,* 455 U.S. at 394, 102 S.Ct. at 1133; *Hardin v. City Title & Escrow Co.,* 797 F.2d 1037, 1040 (D.C.Cir.1986).

■ The following makes explicit what was implicit in *Delphis Bank:* because the jurisdictional grant and filing requirements are structurally separate, in the absence of any evidence of legislative intent to the contrary, this Court holds that the filing requirement of Subsection 1963(*l* )(2) is not jurisdictional but instead operates as a statute of limitations subject to equitable tolling. *See Zipes,* 455 U.S. at 392–98, 102 S.Ct. at 1131–35; *Phillips v. Heine,* 984 F.2d 489, 491 (D.C.Cir.1993); *Hardin,* 797 F.2d at 1040.

## B. EQUITABLE TOLLING UNDER 18 U.S.C. § 1963(*l* )(2)

■ Although applied sparingly, the doctrine of equitable tolling is available to a court to soften the harsh result that would obtain from the strict application of a statute of limitations. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990); *Phillips,* 984 F.2d at 491. The doctrine may be available in circumstances in which "a claimant has received inadequate notice." *Freeman v. Federal Deposit Insurance Corp.,* 56 F.3d 1394, 1405 (D.C.Cir.1995) (quoting *Mondy,* 845 F.2d at 1057 (quoting *Baldwin Co. Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1729, 80 L.Ed.2d 196 (1984) (per curiam))). Absence of prejudice to the other party and due diligence are important considerations, *see Spannaus v. Fed'l Election Comm'n,* 990 F.2d 643, 644 (D.C.Cir.1993), but absence of prejudice enters the "calculus only if another factor provides the essential underpinning for equitable tolling." *Dougherty v. Barry,* 869 F.2d 605, 613 (D.C.Cir.1989). Whether a claimant has acted with due diligence is a "fact-specific judgment in each case." *Hohri v. United States,* 782 F.2d 227, 250 (D.C.Cir. 1986).

■ In this case, three propositions appear clear. First, the Department of Justice has complied fully with the letter of the statute, providing Banque Indosuez with the notice to which it was entitled under 18 U.S.C. § 1963(*l* )(2). Second, Banque Indosuez failed to file its claim within thirty days of the published notice, as required by statute. Third, Banque Indosuez, alerted early to the possibility that it had a claim, did not sit idle. Instead, it pursued its claim long before the $263,250 was actually declared forfeited to the government on August 19, 1993.

The specific and repeated attempts by Banque Indosuez to determine whether the funds were in fact among those BCCI assets seized by the government satisfies this Court that Banque Indosuez acted with due diligence in pursuing its claim. While awareness of the blocked sum imposed a duty on Banque Indosuez to conduct a reasonable inquiry, due diligence does not require Banque Indosuez to have succeeded in identifying with precision the location of the $263,-500, particularly when specific inquiries to the Department of Justice went unanswered. This is not a case in which a claimant who has received actual notice nevertheless sat on its claim until the limitations period expired. *See, e.g., Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam). Here, Banque Indosuez attempted to determine whether it had a claim and, if so, what procedure it must follow to preserve its claim.

While due diligence may be lacking in some cases where the claimant has failed to monitor publication notices in major newspapers, even if Banque Indosuez had diligently monitored the notices,[7] it is not clear that the published notice would have provided adequate notice to Banque Indosuez that it had a claim. There is more than a suggestion in the record that the notice failed to identify with sufficient clarity that the sum of $263,-500 was included within the amount of $827,-396.35, declared forfeited by the government in BCP's account number 23012. There is no

7. There is no evidence in the record to indicate that Banque Indosuez did or did not monitor the

major newspapers for publication notices.

evidence that Banque Indosuez was advised, or otherwise had knowledge, that the $263,500 was placed in this account. Except for the Federal Reserve's correspondence directing its inquiries to the Department of Justice, until it received Justice's letter dated September 17, 1993, on November 15, 1993, all Banque Indosuez knew with any certainty was what the Federal Reserve had told Ms. Marx earlier in the year: the sum of $263,500, inadvertently sent to First American on July 12, 1991, was blocked. On November 15, 1993, three weeks after the close of the statutory period to file claims, Banque Indosuez received the long-sought answers to its multiple inquiries.

Perhaps Banque Indosuez should have, after scrutinizing the published notices of forfeiture, filed protective claims as a precautionary measure where funds in any BCP accounts at First American were declared forfeited. However, while prudent, such extremely cautious measures are not necessary to satisfy the due diligence standard under the facts of this case. As discussed above, the published notice did not specifically identify the sum Banque Indosuez sought. *See United States v. Estevez*, 845 F.2d 1409, 1411–12 (7th Cir.1988) (notice defective where published notice was insufficient to put third party on notice that forfeiture included third party's interest; failure to file "excusable"). Given the combination of the ambiguity in the published notice as to the $263,500 and the government's silence in the face of Banque Indosuez' direct inquiries, the failure to file timely is excusable; it should not be dispositive of what otherwise may be a meritorious claim.

Also relevant in the Court's calculus is the fact that the government cannot be prejudiced by equitably tolling Banque Indosuez' filing period. If the transfer to First American occurred as Banque Indosuez avers, it is likely that the government would have no entitlement to the sum of $263,500.

Under the circumstances of this case, a wooden application of 18 U.S.C. § 1963(*l*)(2) would result in granting the government's Motion to Dismiss. Banque Indosuez did not file its claim within 30 days of the last date of the published notice as the statute requires.

However, the letter of the law need not be applied woodenly if, in so doing, fundamental fairness would become a casualty. While it should be invoked judiciously, equitable tolling is available to the Court to do justice and steer around such unfair results. In this case, where the foreign petitioner has made repeated attempts to obtain information from the government regarding the assets at issue; where the government's notice failed to identify specifically the $263,500 sought; where Banque Indosuez filed its claim within 30 days of being provided actual notice; where its claim was also filed within a reasonable time after the date of constructive notice; where Banque Indosuez has at least made a *prima facie* demonstration on the merits of an interest superior to that of the government's; and where no prejudice would inure to the government, equitable tolling is appropriate.

The government's Motion to Dismiss will be denied.

### CONCLUSION

For the reasons stated above, it is hereby

ORDERED that the government's Motion to Dismiss is denied; and it is

FURTHER ORDERED that should the government or the Court–Appointed Fiduciaries oppose Banque Indosuez' L–Claim on the merits, briefs in opposition shall be filed on or before March 29, 1996; Banque Indosuez' reply, if any, shall be filed on or before April 12, 1996.

IT IS SO ORDERED.