UNITED STATES of America

v.

BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, Defendants.

Crim. A. No. 91–0655 (JHG).

United States District Court, District of Columbia.

Feb. 27, 1996.

B. Gray Gibbs, St. Petersburg, FL, pro se, Syed A. Hussain, Akbar A. Bilgrami, Sebte Hassan, Ian Howard.

John Paul Hume, Perkins & Coie, Washington, DC, B. Gray Gibbs, St. Petersburg, FL, for Amjad Awan.

Lee J. Radek, Director, Asset Forfeiture Office, Criminal Division, U.S. Dept. of Justice, Stefan D. Cassella, Deputy Director, Michelle Craford, Trial Attorney, Robert C. Dalton, Trial Attorney, U.S. Dept. of Justice, for U.S.

## THIRD ROUND PETITION OF B. GRAY GIBBS, P.A., AMJAD AWAN, SYED A. HUSSAIN, AKBAR A. BILGRAMI, SEBTE HASSAN AND IAN HOWARD

### ORDER GRANTING MOTION TO DISMISS

JOYCE HENS GREEN, District Judge.

Presently pending is the United States' Motion to Dismiss ("Motion to Dismiss") the Petition Pursuant to 18 U.S.C. § 1963(*l*) to Determine Petitioners' Interest in Property Ordered Forfeited ("L–Claim"). The grounds of the Motion to Dismiss are lack of timeliness, lack of standing, and failure to state a claim upon which relief can be granted.

For the reasons expressed below, the motion will be granted and the petition will be dismissed.

## BACKGROUND

On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants (collectively "BCCI") and the plea agreement between them and the United States of America. Thereupon, and in accordance with 18 U.S.C. § 1963, an Order of Forfeiture was entered.

Paragraph 1(e) of the Order provides that the corporate defendants named in this action shall forfeit to the United States ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time, but not property that may be brought into the United States by or on behalf of Court–Appointed Fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates as described in the plea agreement.

Attached to the First Order of Forfeiture was a listing of BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a First Supplemental Order on January 31, 1992, which directed immediate seizure of the specific assets listed therein. The Court has since amended the Order of Forfeiture to include additional assets, including property set forth in the Second and Third Supplemental Lists of Forfeited Property. *See* Order of Forfeiture of July 29, 1992 (Second

**1272**

Order of Forfeiture); Order of Forfeiture of August 19, 1993 (Third Order of Forfeiture).

The Third Order of Forfeiture is relevant to the petitioners' L–Claim presently before the Court. Attached to the Third Order of Forfeiture was a Third Supplemental List of Forfeited Property aggregating $101,302,-465.54. Included among the accounts to be seized was an escrow account at Foley & Lardner of Tampa, Florida, in the amount of $100,000 and which is at issue in the instant L–Claim.

In compliance with 18 U.S.C. § 1963($l$)(1) and to inform third parties of their potential rights to seek recovery of assets declared forfeited in the Third Order of Forfeiture, the United States published notice of the Order of Forfeiture, as amended, during the period between September 3, 1993, and September 27, 1993 in eleven major newspapers including the *Wall Street Journal*, the *New York Times*, the *Miami Review*, the *Chicago Tribune*, the *Los Angeles Daily Journal*, the *Washington Post*, and the *International Herald Tribune*. *See* United States' Notice to the Court of the government's compliance with Order of August 19, 1993, filed September 21, 1993.[1] In addition, personal notice was sent to 523 persons and entities, including notice to the address provided by petitioner Gibbs, acting as counsel for all of the petitioners and in his capacity as a claimant. *Id.* at Exhibit 2, at 18; Motion to Dismiss, *supra*, at 2 & Exhibit B (letter of September 7, 1993, with return receipt acknowledgment attached).

Well prior to entry of the Third Order of Forfeiture, the government engaged in discussions during the fall of 1992 with petitioner Gibbs, who, as counsel, represented all of the petitioners. Subsequently, the Asset Forfeiture Office advised Gibbs by letter that it intended to seek forfeiture of the funds. *See* Motion to Dismiss, *supra*, at 2 & Exhibit A. In relevant part, the Justice Department's letter of October 16, 1992, stated:

The Asset Forfeiture Office has reviewed the matter of the BCCI-related $100,000 held in escrow by your former firm. Based on our review, we have concluded that all of these funds are subject to forfeiture under the Order of Forfeiture issued on January 24, 1992, by the United States District Court for the District of Columbia in *United States v. BCCI Holdings (Luxembourg), et al.*, Crim. No. 91–0655 (JHG) [1992 WL 100334].

We intend to file a motion in the near future to amend the Order of Forfeiture to include these funds, along with other assets identified as forfeitable. As a potential claimant to these funds, your firm will receive notice of the procedures to contest forfeiture of these funds in accordance with 18 U.S.C. § 1963($l$) at an appropriate time.

Letter of Lee J. Radek, Director, Asset Forfeiture Office, U.S. Department of Justice (signed by Robert C. Dalton) to B. Gray Gibbs, Esq., Foley & Lardner, dated October 16, 1992, attached to Motion to Dismiss, *supra*, at Exhibit A.

---

1. In relevant part, the notice published provided:
   Notice is hereby given that on August 19, 1993, in the above-captioned case, the Honorable Joyce Hens Green, United States District Judge for the District of Columbia, entered an order condemning and forfeiting the following properties to the United States of America:

   **Third Supplemental List of Forfeited Property**

   | Account No. | Description | Approx. Value |
   |---|---|---|
   | | * * * | |
   | **Foley & Lardner, Tampa, FL | | |
   | | Escrow Account | $100,000.00 |
   | * * | * * * * | * |

   The Order of Forfeiture having been entered, the United States hereby gives notice of its intention to dispose of each of the forfeited properties in such manner as the Attorney General of the United States may direct, consistent with the plea agreement entered into by the defendants and the United States on December 19, 1991. Any persons or entities having or claiming a legal right, title or interest in any of the aforementioned properties must, within thirty (30) days of the final publication of this notice or actual receipt thereof, whichever is earlier, petition the United States District Court for the District of Columbia for a hearing to adjudicate the validity of his/her alleged interest in the property pursuant to Title 18, United States Code, Section 1963($l$).
   United States' Notice to the Court, *supra*, at Exhibit 2.

On February 3, 1993, several months after the government provided Gibbs notice that it intended to seek forfeiture of the funds, Gibbs left Foley & Lardner and moved to a new address. *See* L–Claim, *supra*, at 4. However, it appears that Gibbs never notified the government of his new address, because on September 7, 1993, the government sent a letter Notice of Forfeiture to Gibbs at his Foley & Lardner address. *See* Motion to Dismiss, *supra*, at 2 & Exhibit B. In relevant part, that letter stated:

> The procedure for filing a claim is set forth more fully in Title 18, United States Code, Section 1963(*l* ). Under Section 1963(*l* )(2), a person intending to file a claim must do so in the above-styled case within thirty (30) days of his receipt of the Notice of Forfeiture by mail or within 30 days of the last publication of the Order of Forfeiture in a newspaper of general circulation, *whichever is earlier.* As of the date of this letter, the Notice of Forfeiture has not yet been published for the last time; therefore, you will likely have 30 days from receipt of this letter in which to file a claim. *If delivery of the letter is delayed for any reason until after the last publication date, however, the time for filing a claim would run from the last publication date and not from the date of the receipt of the letter.*

Letter of Lee Radek, Director, Asset Forfeiture Office (signed by Robert C. Dalton for Stefan D. Cassella) to B. Gray Gibbs, Esq., dated September 7, 1993, attached to Motion to Dismiss, *supra*, at Exhibit B (first emphasis in original, second emphasis added); *see also* Notice to the Court (filed Sept. 21, 1993), *supra*, at Exhibits 1, at 18 (addressees included B. Gray Gibbs) & 2, at 1–2 (copy of letter).

Foley & Lardner acknowledged receipt of the letter to Gibbs on September 13, 1993. *See* Motion to Dismiss, *supra*, at Exhibit B. On September 27, 1993, the last notice of forfeiture was published, triggering the commencement of the 30–day window for filing *l*-claims under the statute. By letter of November 23, 1993, Foley & Lardner advised the government that Gibbs had left the firm, *id.* at 2, explaining that Gibbs retained "pos-session, custody or control" of the escrow account when he left the firm. *Id.* at Exhibit C. Foley & Lardner provided the government with Gibbs' new address, and although not required by statute, the government provided Gibbs with additional personal notice. The government also instructed him to forward the funds in the escrow account to the Marshals Service. *Id.* at 3 & Exhibit D. Gibbs later contacted the government, explaining that he never received the notice and requesting a copy so that he could file a claim. *Id.* at 3.

On December 27, 1993, Gibbs, on behalf of himself and Petitioners Awan, Hussain, Bilgrami, Hassan and Howard, filed the instant L–Claim, and requested a hearing. *See* L–Claim, *supra*, at 4–5. In their L–Claim, the petitioners state that BCCI forwarded the $100,000 to Gibbs for the purposes of consummating a tax settlement between the state of Florida and Awan, Hussain, Bilgrami, Hassan and Howard. *Id.* at ¶ 4. However, Florida rejected the settlement offer, *id.* at ¶ 7, and the funds, minus attorneys fees, remained in escrow under Gibbs' control. *Id.* at ¶¶ 9–11. The petitioners claim entitlement to the funds "by virtue of services rendered to BCCI and each of the petitioners qualifies as bona fide purchaser for value (the value being the services rendered to BCCI) in the property." *Id.* at ¶ 13. Gibbs bases his entitlement on the services he rendered to the other petitioners. *Id.* at ¶ 14. All of the petitioners claim they had no reason to believe that the settlement fund was subject to forfeiture at the time they rendered services. *Id.* at ¶¶ 13–14. Gibbs offers the following reason for the petitioners' tardy L–Claim:

> Because G. Gray Gibbs left the law firm of Foley & Lardner in February, 1993 and moved to a new address, the petitioners herein did not receive notice of the forfeiture of the settlement fund until December 14, 1993 when it was faxed to B. Gray Gibbs as evidenced by the acknowledgment attached hereto as Exhibit "A".

*Id.* at ¶ 12.

On February 25, 1994, the government filed its Motion to Dismiss, *supra*. On November 30, 1994, this Court scheduled hear-

ings, providing the petitioners with notice that the hearing on their L–Claim, should they wish to appear, had been scheduled for January 20, 1995. *See* Order of November 30, 1994. The petitioners did not appear at the hearing.

The government contends that the L–Claim should be dismissed on a number of alternative grounds. First, because the L–Claim was filed more than 30 days after the last date of published notice, it is barred as untimely. *See* Motion to Dismiss, *supra*, at 4–6. Second, the petitioners lack standing, because none is a bona fide purchaser for value and only one (Hassan) was reasonably without cause to believe that the property was subject to forfeiture. *Id.* at 7–10. Third, Gibbs has failed to state a claim for relief in his claim for attorneys fees, because "[t]here is no exemption from forfeiture for attorneys fees under RICO where the attorney is not a bona fide purchaser." *Id.* at 11.

### Discussion

Title 18, United States Code, Section 1963 sets forth an orderly procedure by which third parties seeking to recover interests in forfeited property may obtain judicial resolution of their claims. The provision granting standing to parties seeking to amend an order of forfeiture to exclude certain property states:

> Any person other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

18 U.S.C. § 1963(*l*)(2).

Section 1963(*l*)(6) sets forth the substantive elements that a third party must establish to obtain amendment of an order of forfeiture. This section provides:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section;
>
> or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.[2]

Only by establishing standing and satisfying the requisite elements of either Subsection 1963(*l*)(6)(A) or Subsection 1963(*l*)(6)(B) may a party obtain judicial relief from an order of forfeiture. *See United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, ─── U.S. ───, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *United States v. Schwimmer*, 968 F.2d 1570, 1584 (2d Cir.1992); *United States v. Lavin*, 942 F.2d 177, 187 (3d Cir.1991). If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing. *See United States v. Campos*, 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Magee-an*, 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd. without opinion*, 822 F.2d 62 (9th Cir.1987); S.Rep. No. 225, 98th Cong., 1st Sess. 191, 208 n. 46 (Sept. 12, 1983).

---

**2.** Title 18 U.S.C. § 1963(*l*)(6) contains exactly the same language as 21 U.S.C. § 853(n)(6), the statute providing for forfeiture in criminal narcotics cases, and it appears that no court has interpreted these two provisions differently. Because the two subsections are identical and be-cause of the relative dearth of case law interpreting and applying Section 1963(*l*), the Court's opinion relies on the reasoning contained in Section 853(n) cases as well as that in Section 1963(*l*) cases.

In this case, the petitioners filed their L–Claim untimely. Moreover, they have failed to offer a basis for equitable tolling. Consequently, the L–Claim will be barred as untimely, the government's motion will be granted, and the L–Claim dismissed.

In general, a court is obligated to apply statutory time requirements as written even though "those words lead to a harsh result." *United States v. Locke,* 471 U.S. 84, 95–96, 105 S.Ct. 1785, 1792–93, 85 L.Ed.2d 64 (1985). Where a statutory deadline has passed and a litigant has failed to file timely, substantial compliance is not enough. *Id.* at 100–02, 105 S.Ct. at 1796–96. This Court has previously determined that the time limits applicable to *l*-claims under 18 U.S.C. § 1963(*l*)(2) are not jurisdictional in nature, which, if jurisdictional, would deprive the Court of any authority to offer shelter to a duly diligent, but late-filing litigant. Memorandum Opinion and Order of Feb. 27, 1996, *United States v. BCCI Holdings (Luxembourg) S.A., et al.,* 916 F.Supp. 1276, 1282–1284 ("*In re Petition of Indosuez Bank*"); *see also* Order of Nov. 13, 1992, *United States v. BCCI Holdings (Luxembourg), S.A.,* Cr. No. 91–0655, Slip. op. at 4 ("*In re Petition of Delphis Bank* ").

Because the time limitations are not jurisdictional, the Court has the discretion to invoke the doctrine of equitable tolling to soften the harsh result that would obtain from the strict application of a statute of limitations. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990); *Phillips v. Heine,* 984 F.2d 489, 491 (D.C.Cir.1993). The doctrine may be available in circumstances in which "a claimant has received inadequate notice." *Freeman v. Federal Deposit Insurance Corp.,* 56 F.3d 1394, 1405 (D.C.Cir.1988) (quoting *Mondy,* 845 F.2d at 1057 (quoting *Baldwin Co. Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1729, 80 L.Ed.2d 196 (1984) (per curiam))). Absence of prejudice to the other party and due dili-

gence are important considerations, *see Spannaus v. Fed'l Election Comm'n,* 990 F.2d 643, 644 (D.C.Cir.1993), but absence of prejudice enters the "calculus only if another factor provides the essential underpinning for equitable tolling." *Dougherty v. Barry,* 869 F.2d 605, 613 (D.C.Cir.1989). Whether a claimant has acted with due diligence is a "fact-specific judgment in each case." *Hohri v. United States,* 782 F.2d 227, 250 (D.C.Cir. 1986).

In this case, it is clear that the Department of Justice has not only complied fully with the letter of the statute, providing the petitioners with the notice to which they were entitled under 18 U.S.C. § 1963(*l*)(2), but the government has gone well beyond the statutory requirements, providing the petitioners with repeated personal notice through their attorney, co-petitioner Gibbs. In October of 1992, Gibbs was provided advance notice that the government intended to seek forfeiture of the escrow account and he was advised of the applicable law.[3] By letter of September 7, 1993, the government provided Gibbs with notice of the Third Order of Forfeiture through a letter sent to Gibbs' last known, and believed to be current, address. Relying upon a third party (Foley & Lardner) who advised that Gibbs had changed addresses, the government later directed personal service at Gibbs' new place of employment. And, finally, while reserving its right to move for dismissal for failure to file timely, the government provided yet another copy of the Order of Forfeiture to Gibbs via facsimile pursuant to his request. The government is commended for its efforts, which exceed the statutory requirements. However, under the statute, the petitioners' L–Claim was required to have been filed no later than October 27, 1993. Because it was not filed until December 27, 1993, it is untimely.

Untimely *l*-Claims are barred unless the Court, in its discretion, determines that an equitable basis is present to toll the limita-

---

3. Since he is an attorney, it is reasonable to charge Gibbs with the responsibility to review the law, 18 U.S.C. § 1963, which the government pointed out in its letter of October 16, 1992. It is also reasonable to expect that after he reviewed the applicable law, he would have advised his clients that, under 18 U.S.C. § 1963(*l*)(2), they must file their claim within 30 days of the published or actual notice of forfeiture, whichever came earlier.

tions period. The petitioners have not identified a suitable basis for equitable tolling and, under the facts of this case, none is apparent to the Court. The facts of this case indicate that the petitioners were less than duly diligent—making application of the doctrine of equitable tolling unavailable as a matter of this Court's discretion if not unavailable as a matter of law.

Gibbs, as counsel for the petitioners, was provided with actual notice that the government would seek forfeiture of the escrow account under his custody and control. *See* Letter of October 16, 1992, attached to Motion to Dismiss, *supra*, at Exhibit A. The Court expects that Gibbs, as counsel, would have not only reviewed the law on his behalf and that of his clients, advising them and taking action as appropriate, but he also would have monitored major newspapers, such as the *Miami Review*, for the expected publication of the notice of forfeiture. Moreover, a person exercising due diligence in such a matter is expected to have provided the government with a new or forwarding address to ensure that personal notice arrived promptly. Given Gibbs' apparent omissions, the petitioners are estopped from claiming foul now, particularly since no foul has occurred. The government provided the petitioners with all the notice to which they were entitled and more. Despite the fact that their representative moved without providing the government with an updated address, the Department of Justice tracked Gibbs down and provided him or his agents with personal notice on multiple occasions. The petitioners received early notification that the escrow account was subject to forfeiture and they received more notice than is required by law. Nevertheless, they failed to file timely.

■ Unlike Indosuez Bank, *see In re Petition of Indosuez Bank*, *supra*, the petitioners have not presented this Court with an acceptable reason for their failure to file

timely. Not only have the petitioners not been misled, *see In re Petition of Delphis Bank*, *supra*, but the government's attempts to provide the petitioners with notice exceeded the requirements imposed by 18 U.S.C. § 1963(*l*)(2). Moreover, the petitioners did not demonstrate due diligence. *See In re Petition of Indosuez Bank*, *supra*. It is not that the petitioners, through Gibbs, have presented a weak case for equitable tolling. It is that they have presented virtually no case at all. The petitioners' L–Claim will be barred as untimely and the Motion to Dismiss will be granted.[4]

### CONCLUSION

For the reasons stated above, it is hereby

ORDERED that the government's Motion to Dismiss is granted.

IT IS SO ORDERED.

---

**4.** Although the Court has dismissed the petition on the grounds of timeliness, the L-claim also would have failed on the merits. The petitioners claim entitlement to the funds provided by BCCI and placed in escrow for the purposes of a sales tax settlement, but they have not provided sufficient proof that the funds represent "additional

compensation for each of the claimants." The petitioners are not bona fide purchasers for value under 18 U.S.C. § 1963(*l*)(6)(B) and Gibbs has provided no documentation or other evidence to establish his claim save his unsupported statements.