**UNITED STATES of America,**

v.

**BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, Defendants.**

Crim. Action No. 91–0655 (JHG).

United States District Court,
District of Columbia.

Aug. 26, 1997.

U.S. Dept. of Justice, Stefen D. Cassella, Michele L. Crawford, for the Government.

Joan M. Secofsky, Proskauer Rose Goetz & Mendelsohn, New York City, for Bank of New York.

Robert L. Bragar, Washington, DC, for Bank of California.

*In re* Fourth Round Petitions of the Bank of New York and the Bank of California International

### MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Presently before the Court are the United States' motions to dismiss the Fourth Round Petitions of the Bank of New York ("BNY's L–Claim") and the Bank of California International ("BOCI's L–Claim"), which were filed pursuant to 18 U.S.C. § 1963(*l*). For the reasons stated below, the motions to dismiss will be granted, and the L–Claims will be dismissed.

## Background

The facts surrounding BCCI's collapse are well known in the financial and legal communities, but certain facts bear repeating to set the stage for resolving the instant motions to dismiss these L–Claims.[1] In early 1991, the Bank of England received troubling information about BCCI's financial condition and integrity. In response, it commissioned a special audit, which "disclosed evidence of a complex and massive fraud at BCCI, including substantial loan and treasury account losses, misappropriation of funds, unrecorded deposits, the creation and manipulation of fictitious accounts to conceal bank losses, and concealment from regulatory authorities of BCCI's mismanagement and true financial position." Corrigan, Mattingly & Taylor, *The Federal Reserve's Views on BCCI*, 26 Int'l Law. 963, 970–71 (1992) (based on testimony before the Committee on Banking, Finance and Urban Affairs of the United States House of Representatives on September 3, 1991).

The results of the audit were shared with regulators in other countries, and, on July 5, 1991, banking regulators in the United Kingdom, Luxembourg and the United States, froze assets owned or controlled by BCCI. In New York, the Superintendent of Banks seized BCCI's assets at various New York banks, including those at BOCI and the Bank of New York ("BNY"). By July 6th, eighteen countries had shut down BCCI's operations in their jurisdictions, and, as of July 29, 1991, forty-four countries had closed down BCCI branches.

On November 15, 1991, a three-count Indictment, which included charges of conspiracy, wire fraud and racketeering against BCCI, was filed in this Court. On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants, collectively known as BCCI, and the Plea Agreement between them and the United States of America. *See* Transcript of Guilty Plea Proceedings at 7 (Jan. 24, 1992). In accordance with 18 U.S.C. § 1963, this Court then entered an Order of Forfeiture.

Under paragraph 9 of the Plea Agreement and pursuant to the Order of Forfeiture, BCCI forfeited all of its property interests in the United States. Pursuant to paragraph 1(e) of the Forfeiture Order, the corporate defendants forfeited to the United States their ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time (excluding property brought into the United States by or on behalf of Court–Appointed Fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates).

Attached to the First Order of Forfeiture was a listing of BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a First Supplemental Order on January 31, 1992, which directed immediate seizure of the specific assets listed therein. The Court later amended the Order of Forfeiture to include additional assets, including property set forth in Second, Third and Fourth Supplemental Lists of Forfeited Property. *See* Order of Forfeiture of July 29, 1992 (Second Order of Forfeiture); Order of Forfeiture of August 19, 1993 (Third Order of Forfeiture); Fourth Order of Forfeiture (December 21, 1994). Attached to the Fourth Order of Forfeiture, which is relevant to the petitioners' L–Claims presently before the Court, was the Fourth Supplemental List of Forfeited Property.

---

1. "BCCI," as used herein, refers collectively to BCCI Holdings (Luxembourg) S.A., its two operating subsidiaries, Bank of Credit and Commerce International, S.A., and Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, an entity previously found to be the alter ego of the other BCCI entities.

The Plea Agreement also established the Worldwide Victims Fund and the U.S. Fund. Under the terms of the Plea Agreement, forfeited assets were to be disbursed in equal amounts to the Worldwide Victims Fund and the U.S. Fund. *See* Plea Agreement ¶ 11(c). The broad purpose of the Worldwide Victims Fund, operated by the Court–Appointed Fiduciaries, is to distribute funds "only to innocent depositors, creditors and other victims of BCCI whose claims are not derived directly or indirectly through violations of United States or other laws concerning narcotics, terrorism, money laundering, crimes of violence, or other acts generally recognized as felonies or similar crimes under the law of countries subscribing to recognized norms of international justice." *Id.* ¶ 14.

The purpose of the U.S. Fund is more specific, but no less compensatory. In addition to allowing for reimbursement of the costs of investigation and prosecution of BCCI, bank insurance and other matters, the U.S. Fund is also available to provide "restitution to victims of BCCI, which may include remission to the Court Appointed Fiduciaries in accordance with 18 U.S.C. § 1963(g) for the purpose of facilitating an increase in assets available for distribution by the Court–Appointed Fiduciaries to innocent worldwide victims of BCCI, and which may include claims related to the failure of CenTrust, if any." *Id.* ¶ 12(f). As a result of BCCI's guilty plea and the subsequent criminal forfeiture proceedings, by July 1996 the

United States had "recovered nearly $800 million, virtually all of which has been, or will be, distributed to the victims of the fraud." Testimony of Stefan Cassella before the Judiciary Committee of the House of Representatives (July 22, 1996), 1996 WL 410099, *5 (F.D.C.H.).[2]

In compliance with 18 U.S.C. § 1963(*l*)(1) and to inform third parties of their potential rights to seek recovery of assets declared forfeited in the Fourth Order of Forfeiture, the United States published notice of the Order of Forfeiture, as amended, during the period from January 24, 1995 until April 14, 1995 in eleven major newspapers of general circulation including the *Wall Street Journal, the New York Times,* the International Herald Tribune, the *Los Angeles Daily Journal,* the *Washington Post,* and *USA Today. See* United States' Notice to the Court at 1 & Exhibit A (Docket No. 1424). In addition, personal notice was sent to 267 persons and entities. *See* United States' Notice to the Court at Exhibit A (Docket No. 1412). Through timely filed Fourth Round L–Claims, BNY and BOCI have asserted interests in forfeited property. The United States later filed the instant motions, seeking dismissal on the grounds described below.[3]

### Discussion

BCCI's assets were forfeited pursuant to 18 U.S.C. § 1963,[4] which sets forth an orderly procedure by which third parties seeking

---

**2.** In 1995, over $225 million was disbursed to the Court Appointed Fiduciaries for the Worldwide Victims Fund. *See* Notice to the Court at I (filed Aug. 13, 1996). On August 1, 1996, the United States disbursed an additional $83,651,863.24, *id.* at 2, and, on May 22, 1997, Attorney General Janet Reno "determined that the United States would transfer 100 percent of its share of the forfeited funds to the Worldwide Victims Fund so that the funds might be distributed to all BCCI victims equally on a pro rata basis." Notice to the Court at 2 (filed July 11, 1997).

**3.** Neither of the instant petitioners requested oral argument or appeared at the hearing held on April 23, 1996.

**4.** 18 U.S.C. § 1963(a) provides, in relevant part: Whoever violates any provision of section 1962 of this chapter shall ... forfeit to the United States, irrespective of any provision of State law—

(1) any interest the person has acquired or maintained in violation of section 1962,

(2) any—

(A) interest in:

(B) security of;

(C) claim against; or

(D) property or contractual right of any kind affording a source of influence over;

any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

(3) any property constituting, or derived from, any proceeds which the person has obtained directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

The court, in imposing sentence on such person shall order ... that the person forfeit to the United States all property described in this subsection.

to recover interests in forfeited property may obtain judicial resolution of their claims. It permits any person, other than the defendant, claiming a legal interest in forfeited property to petition the Court for a hearing to adjudicate the validity of that interest. 18 U.S.C. § 1963(*l*)(2).[5] Section 1963 (*l*)(6) sets forth the substantive elements that a third party must establish to obtain amendment of an order of forfeiture:

If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

18 U.S.C. § 1963(*l*)(6).

■ A petitioner must first establish standing. Only by establishing standing and alleging the requisite elements of either § 1963(*l*)(6)(A) or § 1963(*l*)(6)(B) may a party obtain judicial relief from an order of forfeiture. *See United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of Pacific Bank)*, 956 F.Supp. 5, 10 (D.D.C.1997); *United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of BCCI(O) Foreign Branches)*, 833 F.Supp. 32, 36 (D.D.C.1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom.*

*Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of Chawla)*, 833 F.Supp. 9, 13 (D.D.C.1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *see also United States v. Schwimmer*, 968 F.2d 1570, 1584 (2nd Cir.1992); *United States v. Lavin*, 942 F.2d 177, 187 (3rd Cir.1991). If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing. *See In re Petition of Pacific Bank*, 956 F.Supp. at 10; *see also* S.Rep. No. 225, 98th Cong., 1st Sess. 191, 208 n. 46 (Sept. 12, 1983); *United States v. Campos*, 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Mageean*, 649 F.Supp. 820.825 (D.Nev.1986), *aff'd without opinion*, 822 F.2d 62(9th Cir.1987).

In resolving a motion to dismiss, the Court assumes true, as she must, the facts alleged by the petitioner in its L–Claim. A motion to dismiss under Fed.R.Civ.P. 12(b)(6) may be granted if it appears that the petitioner can prove no facts that would entitle it to relief *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Kenneda v. United States*, 880 F.2d 1439, 1442 (D.C.Cir.1989). The Court construes the complaint liberally, granting a petitioner the benefit of any reasonable inferences that can be derived from the facts alleged. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *Kowal v. MCI Communications*, 16 F.3d 1271, 1275 (D.C.Cir.1994).

Section 1963(*l*)(2) requires a party to assert "a legal interest in property forfeited to the United States" to have standing. This requirement is imposed to further the pur-

---

5. This provision provides:

Any person other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

pose of an L–Claim proceeding, which, while ancillary to the underlying criminal case, is intended to ensure that property forfeited to the United States was that of the defendant; it does not attempt to divide the defendant's estate among competing claimants. *See United States v. BCCI Holdings (Luxembourg), S.A. (In re Petition of General Creditors)*, 814 F.Supp. 106, 110 (D.D.C.1993). This latter task is properly performed at a liquidation proceeding, where all parties without a "legal interest" in forfeited property can recover on a *pro rata* basis with the many other claimants to the debtor's estate. *Id.* at 111; *see Downriver Community Fed. Credit Union v. Penn Square Bank*, 879 F.2d 754 (10th Cir.1989), *cert. denied*, 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990); *First Empire Bank–New York v. F.D.I.C.*, 572 F.2d 1361 (9th Cir.1978), *cert. denied*, 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).

■ The critical inquiry in an L-proceeding is, therefore, ownership of the disputed funds. As recognized by this Court and most, if not all, other courts addressing the issue, an unsecured creditor does not possess an interest in any specific asset of a debtor and merely has a general interest in the debtor's entire estate. *See In re Petition of Chawla*, 46 F.3d at 1191; *In re Petition of Pacific Bank*, 956 F.Supp. at 10; *see also Schwimmer*, 968 F.2d at 1581; *Campos*, 859 F.2d at 1240; *United States v. Reckmeyer*, 836 F.2d 200, 206 & n. 3 (4th Cir.1987); *Mageean*, 649 F.Supp. at 828. Because a general creditor is unable to assert an interest in a specific asset, it cannot assert a legal right, title, or interest "in property which has been ordered forfeited" as required by § 1963(*l*)(2), at least in situations where, like here, a defendant's entire estate is not subject to forfeiture. *In re Petition of Chawla*, 46 F.3d at 1191; *see Reckmeyer*, 836 F.2d at 206 n. 3 ("It is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtor's estate that frustrates general creditors who attempt to contest ... forfeitures."). Accordingly, absent a showing of an interest in a specific asset, the petitioners would lack standing to assert a claim in these L-proceedings.

## BNY's L–Claim

BNY seeks $3,600, which was forfeited to the United States pursuant to the Fourth Order of Forfeiture. Assumed true for the purposes of this motion, BNY alleges that on December 9, 1991, Citibank, N.A. ("Citibank") instructed BNY to transfer $3,600 to Bank of Credit and Commerce (Emirates) Abu Dhabi ("BCCE") for further credit to Emirates National Chemicals Company, account number 1004874. BNY's L–Claim ¶ 6. However, due to an error, the $3,600 was credited to the account of BCCI (Dubai branch) instead of to the account of BCCE. *Id.*

After Citibank brought this error to BNY's attention, BNY requested that the New York State Superintendent of Banks ("Superintendent") return the $3,600. *Id.* ¶ 7. BNY was advised that the Superintendent did not object to a return of the funds, but that a court order was necessary to effectuate such return. *Id.* On November 15, 1993, the New York Supreme Court filed an order directing the Superintendent to release those funds. *Id.* ¶ 8. However, on November 19, 1993, pursuant to an Order issued by this Court, the funds were transferred to the Court Registry Investment System and later forfeited pursuant to the Fourth Order of Forfeiture (entered on December 21, 1994). *Id.* BNY's L–Claim followed.

■ Examined under Article 4–A of the New York Uniform Commercial Code ("N.Y.U.C.C.") and the law applicable to standing, BNY's L–Claim must be dismissed. While it is undisputed that the transfer to BCCI was due to a clerical error, it is also undisputed that BCCI accepted the funds. N.Y.U.C.C. § 4–A–209(2)(b). As a matter of law, title to the funds passed to BCCI when the funds transfer was completed. *Id.* § 4–A–104(1); *see Shawmut Worcester County Bank v. First American Bank & Trust*, 731 F.Supp. 57, 60 (D.Mass.1990). "[P]ursuant to Article 4A, BCCI, however improperly, acquired an ownership interest in the funds and petitioner[ ] became [a] mere claimant[ ] to those funds." *United States v. BCCI Holdings (Luxenmbourg) S.A., et. al., (In re*

*Mistaken Wire Transfer Petitioners)*, 1994 WL 914460 *5 (D.D.C., Oct.28, 1994).

Upon completion of the transfer, the funds became part of the general deposits of BCCI and the BNY became a general depositor. *See United States v. BCCI Holdings (Luxembourg) S.A., et al., (In re Petitions of General Depositors)*, 814 F.Supp. 106, 109–10 (D.D.C.1993). At that point, the beneficiary bank (BCCI) acquired ownership of the funds, and the sender acquired a cause of action. *Id.* Such a cause of action is not a "legal interest" in the forfeited property, but an unsecured claim against the estate of the bank. *Id.* And, it is the law of this Circuit that general creditors lack standing to assert claims under 18 U.S.C. § 1963(*l*). *In re Petition of Chawla*, 46 F.3d 1185, 1191 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995). Moreover, the inability to assert a legal interest in a specific asset would undermine the petitioner's claim on the merits. *See, e.g., In re Petition of General Creditors*, 814 F.Supp. at 110–11.

■ Faced with this reality, BNY seeks to distinguish its situation from that of previous mistaken wire transfer petitioners on the ground that it obtained a court order from a state court in proceedings at which the United States failed to object. However, BNY misapprehends both the scope of the state court's order and its relevance to criminal forfeiture proceedings under 18 U.S.C. § 1963. While the state court order released the Superintendent from liability and directed him to release the funds to the petitioner, the order involved only matters of state law regarding the New York liquidation of BCCI's estate. The state court's order did not, nor could it, preempt or limit a forfeiture order entered by this Court pursuant to 18 U.S.C. § 1963(*l*). Nor did the order change the fact that, under the governing law and however improperly, BCCI acquired title to the funds. This single fact compels the result reached here in applying federal law: BNY retains, at most, a cause of action against BCCI in the nature of an unsecured

claim, which is not sufficient to confer standing in this L–Claim proceeding.

## BOCI's L–Claim

In BOCI's L–Claim, it seeks $21,375 deposited with BCCI (Sri Lanka) in account 91–212407–1121, which was held at BOCI. The petitioner alleges, and the Court assumes as true, that, on March 8, 1991, Grindley's Bank in Sri Lanka issued a check drawn on Bankers Trust Co. in New York for $21,375, payable to Worldview International Foundation, which deposited that check in its account at BCCI Sri Lanka. *See* BOCI's L–Claim ¶ 3. Because such check was drawn on a New York bank, BCCI Sri Lanka forwarded the check to its correspondent, Petitioner BOCI here, for payment. *Id.*

BOCI received the check on July 16, 1991, and presented it to Bankers Trust the same day. *Id.* ¶ 4. However, Bankers Trust issued a stop payment order, and BOCI received the returned check from the Federal Reserve Bank on July 22, 1991. BOCI then notified BCCI Sri Lanka of the stop payment order, allowing it to debit such sum from BCCI Sri Lanka's account. However, due to a clerical error, this was not done and the funds were erroneously included in a BCCI account that was later forfeited pursuant to the Second Order of Forfeiture on July 29, 1992.

■ Accepting as true the facts alleged by Petitioner BOCI, its L–Claim must be dismissed whether such petition is construed as a Second Round filing or a Fourth Round filing. If the instant L–Claim is a Second Round petition, it is untimely. The assets which BOCI seeks were forfeited pursuant to the Second Order of Forfeiture, and the filing deadline for the Second Round proceedings was October 23, 1992.[6] While BOCI timely filed a petition in that round, it voluntarily withdrew that petition on December 16, 1992. *See* Docket No. 640. In filing the instant L–Claim, which is identical to the withdrawn petition, BOCI fails to offer any reason why this Court might consider equita-

---

**6.** As it did in the instant Fourth Round proceedings, the United States provided proper notice in the Second Round pursuant to 18 U.S.C. § 1963.

bly tolling the statute of limitations. *See United States v. BCCI Holdings (Luxembourg), S.A., et al., (In re Third Round Petitions of Amjad Awan, et al.)*, 916 F.Supp. 1270, 1276 (D.D.C.1996) ("It is not that the petitioners, through [counsel], have presented a weak case for equitable tolling. It is that they have presented virtually no case at all."). *Compare United States v. BCCI Holdings (Luxembourg), S.A., et al., (In re Third Round Petition of Banque Indosuez)*, 916 F.Supp. 1276, 1284–85 (D.D.C.1996) (finding basis for equitable tolling and denying United States' motion to dismiss).

■ On the other hand, if BOCI's L–Claim is considered as a Fourth Round petition, it must be dismissed due to lack of jurisdiction. The assets that BOCI seeks were not forfeited pursuant to the Fourth Order of Forfeiture—the proceedings in which the petitioner is presently before the Court. The petitioner cannot assert an L–claim over property that was not seized pursuant to the Order of Forfeiture being challenged. *See United States v. BCCI Holdings (Luxembourg), S.A., et al., (In re Fourth Round Petition of Khawaja Qadeer Ahmed)*, 923 F.Supp. 264, 265 (D.D.C.1996).

Consequently, BOCI's L–Claim will be dismissed.

### CONCLUSION

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the United States' motions to dismiss are granted. The L–Claims of the Bank of New York and the Bank of California International are dismissed. Judgment will be entered separately in accordance with Fed.R.Civ.P. 58.

IT IS SO ORDERED.